## Barbara M. Gallo *v.* Donald R. Gallo

Bogdanski, Speziale, Peters, Healey and Wright, Js.

Argued December 11, 1980—decision released May 5, 1981

*Joel M. Ellis,* with whom were *Donald J. Cantor* and, on the brief, *Edward S. Hyman,* for the appellant (defendant).

*James V. Guarino,* with whom, on the brief, were *Daniel B. Ryan, Helen F. Ryan* and *Patricia C. Farrell,* for the appellee (plaintiff).

*Nelson R. Goodrich,* for the minor child.

SPEZIALE, J.  In this dissolution of marriage action the trial court awarded custody of the minor son to the mother and allowed reasonable visitation with the father but banned overnight visitation at the father's home so long as the father continues to reside with "another woman without the benefit of wedlock."  The court also ordered a division of the marital property and payment by the defendant of periodic alimony and child support.  On appeal the defendant claims that the court erred in finding certain facts and not finding others, in placing the restriction on overnight visitation, in using improper criteria to determine the monetary awards, and in imposing the following financial obligations on the defendant: payments to an educational fund for the minor child, maintenance of an insurance policy on his life for the benefit of the plaintiff, payment to the plaintiff of 20 percent of the royalties to be received for five years on a series of educational books which the defendant has written, and payment of $1000 of the plaintiff's counsel fees.[1]

The trial court found that the parties were married in 1964 and had a son, Brian, born in 1971.

---

[1] The defendant also claims that the language used in the memorandum of decision to award a particular savings bond is internally inconsistent.  Any ambiguity was clarified in the judgment.

Both parties had earned postgraduate degrees, were currently employed and had earned royalties from publications that they authored. During the marriage the defendant engaged in successive affairs with four women. The last of the four was then living with the defendant in his "relatively small" condominium. The defendant's conduct and attitude toward marriage and family life caused the breakdown of the marriage. The defendant had made no effort to provide religious education for Brian despite Brian's expression of interest in religious matters.

The defendant requests that we strike certain findings of fact made by the trial court in its memorandum of decision; he also wants us to add certain findings of fact. This court cannot find facts. Our function is to decide whether the decision of the trial court was "clearly erroneous in view of the evidence and pleadings in the whole record"; Practice Book § 3060D; *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); and "where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). See *Hollingsworth* v. *Hollingsworth,* 180 Conn. 212, 214–15, 429 A.2d 463 (1980). As for the request to strike certain findings of fact, a review of the record discloses the existence of some evidence supporting all of those facts. Weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role. *Munn* v. *Scalera,* 181 Conn. 527, 530–31, 436 A.2d 18 (1980); *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d

1048 (1975). The defendant also claims that the trial court erred in failing to find certain facts. The question is not what the testimony was but whether the trial court believed it. Some of these facts are implicit in the memorandum of decision and others were not conceded at trial. Therefore we cannot say that the court erred in this regard. See *Ayers* v. *Ayers,* 172 Conn. 316, 319–20, 374 A.2d 233 (1977).

## I

### VISITATION

The principal issue before us concerns the restriction ordered by the court when it awarded the defendant the right of reasonable visitation. The court awarded custody of the minor child to the mother. Although, in the pleadings, each party sought custody, there is no claim of error as to the custody award. The defendant, however, does claim that the court erred in placing on the father's right of reasonable visitation a restriction which bars overnight visitation so long as the father continues to live with a woman who is not his wife.

Throughout the country a significant number of adults are presently living with a member of the opposite sex without benefit of marriage. See Wadlington, "Sexual Relations After Separation or Divorce: The New Morality and the Old and New Divorce Laws," 63 Va. L. Rev. 249, 249–50 and n.2 (1977). Unfortunately, many of these adults are parents of children from a previous marriage; and trial courts across the nation have been confronted with the problem of fashioning custody and visitation orders affecting these children. The Illinois Supreme Court actually inferred future moral contamination despite an absence of proof of present

harm to three preadolescent daughters living with their mother and a man to whom she was not married; in reversing the intermediate appellate court, the Illinois Supreme Court reinstated the trial court order which shifted custody from the mother to the father. *Jarrett* v. *Jarrett,* 78 Ill. 2d 337, 345, 347, 400 N.E.2d 421 (1979), cert. denied, 449 U.S. 927, 101 S. Ct. 329, 66 L. Ed. 2d 155, reh. denied, 449 U.S. 1067, 101 S. Ct. 797, 66 L. Ed. 2d 612 (1980). This approach was characterized as a conclusive presumption that her cohabitation with a man to whom she was not married adversely affected the children. *Jarrett* v. *Jarrett,* 449 U.S. 927, 101 S. Ct. 329, 66 L. Ed. 2d 155 (1980) (Brennan, J., dissenting). See also *DeVita* v. *DeVita,* 145 N.J. Super. 120, 128, 366 A.2d 1350 (App. Div. 1976) (father's nonresident girlfriend may not stay overnight when his children do).

The majority approach has been to uphold visitation restrictions or custody changes where there has been some proof that the cohabitation has affected the child. *DiStefano* v. *DiStefano,* 60 App. Div. 2d 976, 977, 401 N.Y.S.2d 636 (1978) (lesbian relationship; testimony that the mother's lover tried to alienate the children from their father; mother's visits must totally exclude her lover); *In re Jane B,* 85 Misc. 2d 515, 518, 380 N.Y.S.2d 848 (1976) (child's behavior and below-ability school performance attributed to emotional distress over mother's sexual relationship with another woman; custody changed to father with no overnight visitation with mother); *Commonwealth ex rel. Drum* v. *Drum,* 263 Pa. Super. 248, 251, 397 A.2d 1192 (1979) (children's religious concern about wrongfulness of father's conduct; father's female companion to be

absent during children's visits); *Brown* v. *Brown,* 218 Va. 196, 200, 237 S.E.2d 89 (1977) (testimony of adverse effect on children from mother's open adulterous relationship; custody transferred to father).

Similar visitation restrictions have been denied where the harm to the child is outweighed by other factors; *People ex rel. Repetti* v. *Repetti,* 50 App. Div. 2d 913, 914, 377 N.Y.S.2d 571 (1975) (greater weight given to strong preference of teenagers to live with father and to the visitation needs of younger children who are living with the mother); or where there has been no showing of an adverse effect on the child. *Sorace* v. *Sorace,* 236 Pa. Super. 42, 344 A.2d 553 (1975).

Relying on *In re the Marriage of Moore,* 35 Colo. App. 280, 531 P.2d 995 (1975), the defendant contends that the trial court should not consider his living with a woman not his wife. The defendant's reliance is misplaced. There, the appellate court found error in the trial court's consideration of the parent's cohabitation as one factor in the custody decision because the Colorado statute, unlike the Connecticut statute, prohibits consideration of a parent's conduct which is separate from the parent-child relationship. Id., 282; Colo. Rev. Stat. § 14-10-124 (1973).

In Connecticut we must first look to the statute. General Statutes § 46b-56[2] provides the same

---

[2] "[General Statutes] Sec. 46b-56 . . . (b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the ,child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation."

standard for determining both custody and visitation rights: the best interests of the child. The court must consider the wishes of a mature child.[3] In making the initial custody and visitation order the court may consider the causes for the dissolution.

Contrary to the claim of the defendant, the record does not show that the trial court conclusively presumed that it was against the best interests of the child to visit overnight with the noncustodial parent who cohabits with a person not his spouse. Compare *Jarrett* v. *Jarrett,* supra (Brennan, J., dissenting). The court did not say that the restriction was based solely on the fact of cohabitation. In the memorandum of decision, as to the issue of custody and visitation, the trial court discussed not only the father's admitted sharing of a bedroom and bed with the woman while the child was staying there overnight, but also the small size of the father's living quarters and the father's lack of effort to further the child's religious education.[4]

---

[3] In the present case the court did not interview Brian who was seven years old at the time of the hearing. See *Joy* v. *Joy,* 178 Conn. 254, 257, 423 A.2d 895 (1979). In interviews with other professionals Brian exhibited extreme reluctance to discuss the issues of custody and visitation.

[4] The court stated: "The custody of Brian is awarded to the Plaintiff. The defendant may have the right of reasonable visitation with this child provided that the child shall not stay overnight at the four-room apartment or at any other place where the defendant is living with another woman without the benefit of wedlock. His condominium is relatively small. He admitted that he shared a bedroom and bed with this woman to whom he is not married, while Brian has been staying at the apartment with him. The defendant also conceded that he had made no effort to have Brian receive any religious education, although the boy has demonstrated to his mother through his inquiries an interest in his Creator and the church Sunday School."

This is not a case where no other evidence was presented concerning the child's welfare. At the hearing there was extensive testimony by each of the parents, by the woman who was living with the father, and by an unrelated friend of the family. Written reports were submitted by the family relations division and the attorney for the minor child. All agreed that the child had suffered emotional difficulties because of the separation of his parents. The child had experienced school difficulties, was repeating the first grade, and also was seeing a psychologist for therapy on a weekly basis. The father's female companion testified that Brian keeps her at a distance but becomes a little closer during longer visits. She also described the relationship between Brian and her nine-year-old daughter who lives with her and the defendant as recently strained but previously compatible considering their differences in background, age, and sex. The hearing fully aired the after-school, weekend, and vacation visitation arrangements of the pendente lite period. The testimony and the professional reports also indicated sharp disagreement between the parties over the details and timing, but not the principle, of visitation of Brian with the defendant.

The standard for reviewing a visitation order is whether the trial court abused its discretion in making that order. *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 300–301, 377 A.2d 330 (1977). In exercising that discretion the court considers the rights and wishes of the parents and may hear the recommendations of professionals in the family relations field, but the court must ultimately be controlled by the welfare of the particular child. *Seymour* v. *Seymour,* 180 Conn. 705, 710–12, 433 A.2d 1005

(1980); *Stewart* v. *Stewart,* 177 Conn. 401, 408, 418 A.2d 62 (1979); *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926 (1976). This involves weighing all the facts and circumstances of the family situation. Each case is unique. The task is sensitive and delicate, and involves the "most difficult and agonizing" decision that a trial judge must make. Berdon, "Child Custody Litigation: Some Relevant Considerations," 53 Conn. B.J. 279, 280 (1979). The trial court has the great advantage of hearing the witnesses and in observing their demeanor and attitude to aid in judging the credibility of testimony. *Seymour* v. *Seymour,* supra; *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 262–63, 413 A.2d 854 (1979). Great weight is given to the conclusions of the trial court which had the opportunity to observe directly the parties and the witnesses. *Presutti* v. *Presutti,* 181 Conn. 622, 627, 436 A.2d 299 (1980); *Seymour* v. *Seymour,* supra; *Jacobsen* v. *Jacobsen,* supra. "A conclusion of the trial court must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. *Sanchione* v. *Sanchione,* 173 Conn. 397, 402, 378 A.2d 522 (1977); *Spicer* v. *Spicer,* 173 Conn. 161, 163, 377 A.2d 259 (1977). As previously stated, in deciding what is in the best interest of the child, the court is vested with broad discretion. The trial court had the advantage of observing the parties and the witnesses. '[T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Noth-

ing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 (1910) . . . ." *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978). Although our opinion might differ from that of the trial court, we cannot say that the trial court could not reasonably conclude that the welfare of this emotionally upset boy of tender years would be better served by imposing the visitation restriction than by omitting it.

The restriction, however, is overly broad in its application to any place "where the defendant is living with another woman without the benefit of wedlock." The testimony before the trial court concerned only the woman with whom the defendant was cohabiting at the time of the hearing. Thus there is no basis in the evidence for the trial court to extend the restriction to any other woman. The judgment must be modified so that the overnight visitation restriction applies only to the particular woman who was living with the defendant at the time of the hearing.

## II

### FINANCES

#### A. EDUCATIONAL FUND

Prior to the dissolution decree the defendant had established a custodial savings account for Brian's benefit and had been depositing money to the account at the rate of approximately $1000 per year. The defendant's post-trial financial proposal[5] included a payment of $1000 yearly into an educa-

---

[5] At the conclusion of the hearing the trial court requested the parties to submit financial proposals for its consideration.

tional fund for Brian with the defendant as custodian. The trial court ordered the defendant to deposit "as he had agreed to do" $1000 per year into an educational fund. The plaintiff and the defendant are to be joint custodians and joint approval is required for withdrawals.

The defendant attacks this order on three grounds: (1) he did not agree to the deposits; (2) it is invalid for lack of a limitation at Brian's eighteenth birthday; and (3) the joint approval provisions are unworkable. The defendant testified that the fund was established and the deposits made by his agreement in early pretrial settlement negotiations following the separation of the parties. The court did not err in concluding that the defendant agreed to make such payments.

The legislature of this state has established eighteen years to be the age of majority. General Statutes § 1-1d. Consequently child support orders stemming from a dissolution action may not extend beyond the child's eighteenth birthday.[6] *Miller* v. *Miller,* 181 Conn. 610, 613-14, 436 A.2d 279 (1980); *Broaca* v. *Broaca,* 181 Conn. 463, 466, 435 A.2d 1016 (1980); *Hunter* v. *Hunter,* 177 Conn. 327, 330, 416 A.2d 1201 (1979); *Sillman* v. *Sillman,* 168 Conn. 144, 152, 358 A.2d 150 (1975). It is clear that the trial court was conscious of this limitation because, in its unchallenged order to designate Brian as the irrevocable beneficiary of certain life insurance policies, the court ordered the defendant to maintain the policies until Brian is eighteen years old. Neither the periodic child support order

[6] In 1977 the legislature amended General Statutes § 46b-66 to provide for incorporation into the court order of a written agreement of the parties for child support beyond age eighteen. Public Acts 1977, No. 77-488. No such agreement was submitted here.

nor the educational fund order contain any language terminating payments at age eighteen or continuing payments beyond age eighteen. In order to find error in this order it would be necessary to read into the order language which is not there and which would contravene statutory and case law. This we will not do.

With respect to the assertion that the joint approval provision is unworkable, the simple answer is that future cooperation of the parties can only be measured in the future. If the provision proves to be unworkable, the proper approach is to seek modification of the order at that time. General Statutes § 46b-56; *Cleveland* v. *Cleveland,* 165 Conn. 95, 100–101, 328 A.2d 691 (1973).

### B. INSURANCE POLICY

The defendant was ordered to designate the plaintiff as beneficiary on an insurance policy on his life. Such an order is well within the inherent equitable power of the court in a dissolution proceeding. *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975); *Thomas* v. *Thomas,* 159 Conn. 477, 482–83, 271 A.2d 62 (1970). See *Broaca* v. *Broaca,* supra, 473–74 (*Peters, J.,* dissenting on another issue). Insurance premiums are paid during a decedent's lifetime and the proceeds flow directly to the beneficiary. This is not analogous to a claim of continued payment of periodic alimony from the estate of the deceased ex-spouse. See *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 437, 162 A.2d 182 (1960).

### C. ROYALTIES

The defendant is a college professor. During the marriage he co-authored two textbooks and associated workbooks and teachers' manuals which

are collectively called "Bookmark." At the time of the trial one of the books had been released and the others were in the process of being released. The defendant testified that the life span for such textbooks is approximately five years and that he would receive a percentage of the sales income as royalties after deduction of the $1500 he had already received as a publisher's advance against royalties. The trial court awarded to the plaintiff 20 percent of the defendant's royalties on "Bookmark" for a period of five years.

The defendant attacks this award as speculative. It is true that the exact dollar amount of the royalties to be received is not yet known; however, the right to receive the royalties is contractually established at the present time, unlike a potential inheritance which is speculative. See *Krause* v. *Krause*, 174 Conn. 361, 365, 387 A.2d 548 (1978). This is more akin to an order to sell the marital home and divide the proceeds. See *Pasquariello* v. *Pasquariello*, supra, 586–87. Although the exact sale price will not be determined until a sale is concluded, the legal right to the proceeds existed at the time of the order. The award is precisely defined as to subject matter, royalties on a specific completed set of books, and time, five years. It is, therefore, neither indefinite nor speculative.

### D. COUNSEL FEES

The defendant's only claim of error with respect to the award of partial counsel fees is that the court improperly applied the statutory criteria. See General Statutes § 46b-62; *deCossy* v. *deCossy*, 172 Conn. 202, 206, 374 A.2d 182 (1977). This is the same claim which the defendant makes regarding the total financial package of alimony and property

awarded to the plaintiff. Thus the issue of counsel fees is subsumed into the general claim which we now discuss.

### E. STATUTORY CRITERIA FOR ALIMONY AND PROPERTY AWARDS

The statutes governing alimony and the assignment of property in a dissolution proceeding require the court to consider the length of the marriage, the causes for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. General Statutes §§ 46b-82, 46b-81 (c). In addition, with respect to a property division, the court must consider each party's liabilities, opportunity for future acquisition of capital and income, and contribution toward the acquisition, preservation or appreciation of their property. General Statutes § 46b-81 (c). In awarding alimony the court must also consider any property assignment and the desirability of the custodial parent's securing employment. General Statutes § 46b-82.

The trial court stated that these provisions had been considered and that three factors predominate in this case: the parties' future health and earning capabilities, their individual contribution to jointly held property, and the cause of the breakdown of the marriage. All three factors are specifically mentioned in the statutes. The court received financial affidavits from both parties and testimony on these three factors as well as on the other statutory elements. No one factor is determinative of a financial award. *Valante* v. *Valante,* 180 Conn. 528, 530–31, 429 A.2d 964 (1980). It would be error to exclude testimony on any of the statutory factors. *Posada* v. *Posada,* 179 Conn. 568, 572–73,

427 A.2d 406 (1980). Each statutory factor need not be discussed with equal depth in the memorandum of decision. *Hardisty* v. *Hardisty,* 183 Conn. 253, 261, 439 A.2d 307 (1981); *Fucci* v. *Fucci,* 179 Conn. 174, 425 A.2d 592 (1979). Applying these principles to the record before us, there is no merit to the defendant's contention that the trial court based its decision on an erroneous application of the statute.

To the extent that the defendant's argument rests on the premise that the sum of money awarded indicates an improper use of statutory criteria, the issue becomes whether the trial court abused its discretion in making the alimony and property division orders. *Miller* v. *Miller,* 181 Conn. 610, 611, 436 A.2d 279 (1980); *Corbin* v. *Corbin,* 179 Conn. 622, 427 A.2d 432 (1980); *Fucci* v. *Fucci,* supra. As in the custody matters discussed above, the trial court has a distinct advantage over an appellate court because of its proximity to the parties and the evidence which serves as a basis for alimony and property assignment decisions. *Leveston* v. *Leveston,* 182 Conn. 19, 23, 437 A.2d 819 (1980). The conclusions of the trial court will be disturbed only where the court could not reasonably conclude as it did. *Leveston* v. *Leveston,* supra; *Miller* v. *Miller,* supra; *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979).

Both parties worked during the marriage and contributed to the assets which, at the time of the separation, were almost entirely held jointly. The financial affidavits of the parties indicate that at the time of the hearing the total income of each of the parties was approximately equal, as were their expenses. The plaintiff's figures included pendente lite alimony and child support and her then-current

royalties. The plaintiff testified, and the court found, that her royalties were declining and that she desired to take a lower-paying job to be more available to Brian. The defendant's figures included no current royalties and listed as expenses his life insurance premiums, the payments to Brian's educational fund and the pendente lite alimony and child support. The court found that the defendant's "Bookmark" series promises to yield substantial future royalties. At the hearing there was an intensive line-by-line examination of the financial affidavits and the recent income history of both parties.

It is apparent that the trial court acted reasonably in concluding as it did; we find no abuse of discretion in the awards relating to finances.

There is error only in the portion of the visitation restriction which applies the restriction to *any* woman not married to the defendant; the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.