[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR MODIFICATION OFVISITATION
By way of background, the parties were married on May 23, 1986, and the marriage was dissolved by judgment in this court on August 23, 1990 (Driscoll, J.) There were two minor children from this marriage, Katlyn Pfister born April 16, 1988, who is now nine years old, and Robert M. Pfister, born August 14, 1989, who will be eight this coming August. The plaintiff (hereafter referred to as the mother) and the two children have been living with her parents in Norwalk since the parties separated in 1989. In her Memorandum of Decision dated August 23, 1990, entered almost seven years ago, Judge Driscoll granted sole custody of the children to the mother with limited and specific visitation orders to the defendant (hereinafter referred to as the father).
The parties have litigated the issue of expanded visitation on numerous occasions in the past. The current visitation schedule includes two Sundays per month; on one Sunday the children visit him from 1:00 p. m. to 4:00 p. m. and on the other Sunday the time has been extended from 11:00 a.m. to 7:00 p. m. In his motion, the father seeks more time for visitation on alternate weekends, including overnight visits, alternate holidays and three to four weeks during summer vacation.
The hearing on the father's motion to increase his visitation, including overnight visits was held on April 17, 1997, at which time the father was represented by counsel and the mother was pro se. This court heard testimony from both the parties, the maternal grandparents and Ms. Beth A. Walsh, the Family Relations Officer, who completed her visitation study on January 7, 1997. The study is now part of the record. At the end of the hearing, the court appointed Patricia C. Reath, Esquire, attorney for the children pursuant to § 46b-54 of the Connecticut General Statutes. Her written report dated May 21, 1997, was mailed to both parties and counsel of record and is now in the file.
Both Ms. Walsh and Attorney Reath met and interviewed the CT Page 6998 parties and the children before submitting their reports. They also visited the father's home on Lake Zoar in Newtown with the children present.
Before visitation orders are modified, the court must be guided by the best interests of the child. Section 46b-56
C.G.S.; Seymour v. Seymour, 180 Conn. 705, 709 (May, 1980); Gallov. Gallo, 184 Conn. 36, 43 (May, 1981). From the family relations study and the report of the attorney for the children, the testimony of Ms. Walsh, the testimony of both parents and of the maternal grandparents, the court finds the following facts and reasons to support them.
Both Ms. Walsh's visitation study and the report by the attorney for the children recommend that the father's visitation should be increased. They both found the father to be a responsible parent who has acted appropriately with the children for at least the past two years. The children state they have enjoyed the time they visit with him. The father is working full time building homes in the Newtown area, and last year his gross income was about $50,000. The father has made extensive renovations to his home on Lake Zoar, which has three bedrooms, allowing for each child to have a separate bedroom. This home is most suitable for overnight visitation. Although both children have told Ms. Walsh and Attorney Reath that they do not wish to stay overnight with the father, they did not give any logical reason for that view.
As pointed out by Ms. Walsh, some of the mother's negative thoughts and feelings about her husband may be transmitted to the children. The children have no reason to fear the father because his conduct with them during the past two years has been entirely proper. In fact, they talk positively about the time they spend with him now.
Nearly seven years have gone by since the original visitation order was entered and the children were infants. They are now nine and seven years of age. It is long overdue for the father to develop a strong and healthy emotional relationship with both children. The father is an intelligent and law-abiding person. There was no evidence that he is addicted to alcohol or drugs nor that he has not paid his child support. He is building homes in the Newtown area and last year his gross income was about $50,000. He is equally concerned as their mother for the children's safety. CT Page 6999
The children would benefit emotionally by increasing the father's visitation to allow their relationship to grow in a loving and positive manner. Section 46b-56 (a).
There is no logical reason why the father's visitation, including overnight, should be delayed any further. This court finds it is in the best interests of the children to increase the father's visitation now, including overnight visits.
The court has considered the visitation study by Ms. Walsh and the report by the counsel for the children in reaching its conclusions. The study and the report were fair and professional. The following orders shall enter amending the father's rights of visitation and vacation in accordance with this order.
1. SUMMER VACATION: The father shall have a total of two weeks (14 days) vacation time with the children following the end of this school year in June, 1997 and beginning in June, 1998 and each year thereafter, he shall have a total of three weeks vacation time until the children reach majority. The father shall pick them up on the first Friday following the end of school at 7:00 p. m. at the Trumbull Town Hall and return them on the third Friday at 7:00 p. m. to their mother at the Trumbull Town Hall. This vacation time shall be in addition to the regular weekend visitation.
2. SUMMER WEEKEND VISITATION: Because it has been the custom during the past six years for the mother and the children to spend the entire summer on vacation at the maternal grandparents' summer home on the Maryland seashore, alternate weekend visitation after the children's two or three week vacation with the father will run from Saturday at 1:00 p. m. until Sunday at 6:00 p. m. The mother shall bring the children to the Trumbull Town Hall on Saturday at 1:00 P.M. and the father shall return them to her there on Sunday at 6:00 p. m.
3. WEEKEND VISITATION BALANCE OF THE YEAR: The children shall visit with their father after Labor Day to the end of the school year in June on CT Page 7000 alternate weekends from Friday at 6:00 p. m. to Sunday at 6:00 p. m. when he shall return them to the mother. During the other two weekends, the children shall visit with their father on Sunday from 1:00 p. m. to 6:00 p. m. The father shall pick up the children at the Trumbull Town Hall and return them to the mother there. The mother could drop the children off at the paternal grandparents' home in Norwalk on Sunday visitations as long as the father gives her at least forty-eight (48) hours notice.
4. HOLIDAYS: For the balance of the calendar year 1997, the children shall spend Columbus Day, and Christmas Eve from 6:00 p. m. until 12 noon on Christmas Day with the father and with the mother on Independence Day, Labor Day, Thanksgiving and Christmas Day from 12 noon on. For calendar year 1998, the children shall spend with the father the holidays of Easter, Martin Luther King Day, President's Day, Memorial Day, Thanksgiving, Christmas day from 12 noon until 6:00 p. m. Beginning in 1998, the mother shall have the children for the remaining holidays, and these holidays shall alternate between them yearly thereafter. On the father's holidays, he shall pick the children up at 12:00 noon at Trumbull Town Hall and return them there to the mother by 6:00 p. m.
5. PSYCHOLOGICAL SERVICES: Unfortunately for the children, the parents have not been able to communicate with each other since the dissolution was entered almost seven years ago. Therefore, the parents shall initiate psychotherapy and counseling services for the children with a licensed clinician within the next thirty (30) days and share the expense of same equally. The parents shall both enroll and attend a parenting education program within the next thirty (30) days.
6. TELEPHONE CONTACT: In order for the father to have unhampered telephone contact with the children, he may install a private telephone in the mother's home as long as he pays the cost therefor. CT Page 7001
7. LOVE AND RESPECT: Each party shall exert his and her best efforts to refrain from doing anything to estrange the children from the other party, or to injure the opinion of the children as to their mother or father, or to act in such a way as to hamper the free and natural development of the children's love and respect for their natural parents.
8. LEGAL SERVICES: Attorney Patricia Reath's legal fees for services as counsel for the children in the amount of $1,845.00 is approved. The parties shall share equally in the payment of this legal fee. Payment shall be made within two weeks of the date of this decision.
PETRONI, J.