[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF-HUSBAND'S AUGUST 14, 1997MOTION FOR MODIFICATION OF THE COURT'S ORDER OF MAY 27, 1997,WHICH ORDER APPROVED THE STIPULATION OF THE PARTIES AS TO CUSTODYAND VISITATION PENDENTE LITE
The court heard this matter over significant portions of four afternoons,[1] and took testimony of the parties and a Family Relations Officer. As the matter wore on, some of the issues contested became issues of agreement.
There are two children of this marriage, Jordana, born October 28, 1993, and Rachel, born October 13, 1996. The wife is the primary custodian.
The court was ultimately benefitted [benefited] by draft orders requested of and submitted by the parties.
The order of May 27, 1997 is modified and in other places left undisturbed as follows:
A. HUSBAND'S WEEKEND VISITATION
1. The husband shall have visitation with Rachel every other Saturday commencing on Saturday, October 25, 1997, at 9:30 a.m. until that evening at 6:00 p. m. when he shall return Rachel to the wife.
2. The beginning of Rachel's overnight visitation with her father occurs Saturday, December 27, 1997, and continues (on the CT Page 11683 alternating weekends) from Saturday at 9:30 a.m. until Sunday at 9:30 a.m.[2]
3. Commencing Friday, May 1, 1998, and on the alternating weekends thereafter, the husband shall have visitation with Rachel from 5:15 p. m. Friday until Sunday at 9:30 a.m.
4. Prior to May 1, 1998, on the Fridays of the alternating weekends when the husband is to again see Rachel on Saturday, the husband shall visit Rachel at the wife's premises from 5:15 to 5:45. (The parties' draft orders did not make specifically clear that this Friday night provision dealt with the same weekend on which the husband had additional Rachel visitation; however, a subsequent paragraph of this order makes it clear, by agreement in the draft orders submitted, that the husband has no Friday visitation with Rachel on weekends when he is also not with her on
5. On the same pattern of alternating weekends, and commencing Friday, September 4, 1998, the husband shall have visitation with Rachel from Friday at 5:15 p. m. to Monday morning when he shall return Rachel to the wife before Jordana is taken to school.
6. Weekend visitation with Jordana is to proceed as per the May 27, 1997 stipulation, except that Friday visitation is to commence at 5:15 p. m.
B. WEEKDAY VISITATION
1. The husband shall have visitation with both children away from the wife's premises from 5 p. m. until 7:30 p. m. every Tuesday.
2. On the Thursday preceding the weekend on which the husband has no visitation, the husband shall visit with Rachel at wife's premises from 5:15 p. m. until 5:45 p. m., and husband shall have Jordana from 5:45 p. m. for a sleep-over that evening, and husband shall take Jordana to school and/or camp, as applies, on Friday morning. On said Friday, the husband does not have visitation with Rachel. The Thursday night sleep-over referred to supra,
this paragraph, will begin to include Rachel after the point in time when husband has "full weekends with both children," which the court believes is an agreed upon reference to May 1, 1998. This Thursday evening visitation by husband with Rachel is to CT Page 11684 commence at 5:45 p. m.
C. DELETIONS FROM STIPULATION OF MAY 27, 1997
The following paragraphs of the stipulation of May 27, 1997, by agreement of the parties, are to be deleted therefrom: 2a, 3a, 8 and 9.
D. VACATION
1. The husband shall have nine days vacation in February, 1998, with Jordana, from Wednesday, February 18, 1998 at 6 p. m. until the following Friday morning, February 27, 1998, when husband shall bring Jordana to school.
2. The wife shall have vacation with both minor children from Thursday, January 15, 1998 at 7 p. m. until Friday, January 24, 1998, at 9:30 a.m. At that time husband shall have visitation with both minor children until Monday morning, January 26, 1998, when he shall take Jordana to school and return Rachel to the premises of the wife.
E. CHRISTMAS, HANUKKAH, 1997
On December 23, 1997, husband shall have visitation with both children from 5 p. m. until 6:30 p. m.
Husband shall have visitation with both children from Wednesday, December 24, 1997 at 4 p. m. until Thursday, December 25, 1997 at 11 a.m. During this period, husband will not have adorned his premises with Christmas decorations or symbols.
 F. THE SUBJECT MATTER OF PARAGRAPH 1C OF THE MAY 27, 1997 STIPULATION.
The parties stipulated in May that: "Until the dissolution . . . date, neither party shall entertain unrelated persons of the opposite sex overnight in their residence during the time the children are in their care."
The bulk of the testimony and argument in the four sessions devoted to the husband's instant motion for modification of visitation (dated August 14, 1997), dealt with when the younger child would be made available for overnights at husband's residence and the timing of husband's Friday night visitation CT Page 11685 vis-a-vis appropriate management of religious observances at said time. The only outside testimony and evidence[3] taken dealt with the issue of the younger child's overnights with the husband.
Literally no aspersions were cast against the parenting fitness or specific behavior of either parent. It seems fair to say that the arguments on the issue represented strong philosophical differences between the parties; husband urged that the reality of his more recent relationship must be frankly acknowledged by all, while the wife assiduously pressed the point that an immoral example would be set for these very young children born of quite religious parents.
The court has determined that, for the time being, the bilateral prohibition contained in the prior stipulation is most appropriately left in place. Presumably, its negotiation and approval by a judge of this court portrayed the best interests of these young children then and virtually nothing but argument has since occurred to suggest any difference. This court notes that our Supreme Court does not rigidly adhere to the absolute approach of the wife. See Gallo v. Gallo, 184 Conn. 36 (1981), the language which both parties urged on the court.
This is not to say, however, that the May, 1997, stipulation must remain throughout the pendente lite period. It is to be noted that by May, 1998, the younger child will have had the experience of many overnights with her father and have had countless hours to survey his new relationship. The referenced point in time is that at which Rachel's overnights extend from one to two consecutive days. This court has thus determined that said demarcation line presents a logical point when this court's order might be reconsidered. By then, the issues which so diverted the parties from this topic will, presumably, have stabilized and the separate lives of the parties will have settled as well. Any new hearing, if deemed necessary, will be expected to focus exclusively on this issue and the appropriate legal doctrine(s).
No modification of paragraph 1 (c) of the stipulation of May 27, 1997, is granted at this time.
Nadeau, J.