[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION TO MODIFY CUSTODY DATED FEBRUARY 4, 1999 CODED #202 AND DEFENDANT'S MOTION FOR DISCONTINUANCE MONITORING CODED #211
Many of the facts that give rise to these motions are not in dispute. The marriage between the parties was dissolved on the April 27, 1995. The parties submitted an agreement dated April 26, 1995 that included custody and visitation. The stipulation of judgment regarding custody appended to the separation agreement provided that the parties shall share joint legal and physical custody of the minor children and spelled out when the children would spend time with each of the parents.
The April 27, 1995 order was modified on December 18, 1996 as follows: CT Page 11722
 Decree modified 12-18-96 by the Court (Skolnick, J.) and ordered that the children reside with the defendant on Mondays through Fridays and be enrolled in the Branford Public School system. The children shall reside with the plaintiff on Friday afternoon through Monday morning on the first, second and fourth weekends per month and with the defendant on the third weekend, and the fifth weekend if applicable, effective January 1, 1997.
 The plaintiff is responsible to deliver the children in Branford on Monday mornings and in picking the children up from Branford on the first Friday of the month. The defendant will deliver the children to Middlebury on the second and fourth Fridays.
There was a further agreement between the parties dated March 18, 1999 coded #209 that provided as follows:
 AGREEMENT 1) The parties stipulate that the attached agreement ought to be approved by the court and that the terms thereof should be made interim orders of the court.
 2) The matter should be continued to June 17, 1999 for monitoring.
 3) Father shall have the weekend of March 25 in lieu of the April 1st weekend.
 4) Children to remain with father until the earlier of the completion of the F.R.O. report or the end of the current school year.
 5) Mother to have visitation three out of four weekends from Friday at 6:00 P.M. to Sunder at 7:30 P.M. Mother to have weekends two, three and four; father to have weekend one of each calendar month.
6) Pickup and delivery of the children to be done by father at mother's home or such other location as agreed by the parties through counsel. CT Page 11723
 7) Mother's treating psychiatrist report by-weekly to mother's attorney regarding mother's compliance with drug therapy and mother's counsel will report to father's counsel.
 8) Father to pay $2,500 within one week to mother's counsel without prejudice and reasonable fees of children's counsel.
 9) Parties to discuss through counsel the parental access schedule following the end of the current school year. If there is no agreement, either party may move for an appropriate court order.
On June 29, 1999 the parties entered into the following stipulation:
1. Primary residence of the minor children shall be with the defendant commencing on June 24, 1999 without prejudice to plaintiffs claim for modification;
2. The plaintiff shall have visitation with the minor children commencing on July 3, 1999 at 10:00 a.m. and return the children to the defendant on July 6, 1999 at 6:00 p. m.;
3. The plaintiff shall have visitation with the minor children commencing on July 10, 1999 at 10:00 a.m. and return the children to the defendant on July 14, 1999 at 9:00 a.m.;
4. The issues of custody and visitation shall be further evaluated on July 21, 1999 upon the report of Family Relations.
In determining the best interest of the child standard regarding custody and visitation, the court in Cappetta v.Cappetta, 196 Conn. 10, 16. 17 (1988) stated in part as follows:
The award of custody requires the trial court to make difficult and sensitive inquires into the relationships between adults and children. In the search for an appropriate custodial placement, the primary focus of the court is the best interest of the child, the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment.
Such a search requires the court to afford all interested parties an opportunity for a hearing CT Page 11724 concerning the qualifications of each person who is or may be a candidate for custody. It is essential to inquire into each person's parenting skills as well as his or her relationship with the child. (Emphasis provided.)
In discussing the best interest of the child standard, the court in Blake v. Blake, 207 Conn. 217, 224-225 (1988) stated in part as follows:
 In making a determination of custody, the trial court is "bound to consider the child's present best interest and not what would have been in her best interests at some previous time. (Emphasis provided).
The Blake court also cited with approval the case of Yontefv. Yontef, 185 Conn. 275, 283, 440 A.2d 899 (1981). The Yontef
court held in part as follows:
 The test is not which parent was the better custodian in the past but which is the better custodian now. See, e.g., Trunik v. Trunik, 179 Conn. 287, 290, 426 A.2d 274
(1979); Spicer v. Spicer, supra 164; Simons v. Simons, supra, 350. Just as we have refused to adopt a conclusive presumption that a mother is always entitled to custody in preference to a father; see, e.g. Simons v. Simons, supra, 350; so also have we rejected any presumption that a parent's life style necessarily has an adverse effect on a child. Gallo v. Gallo, 184 Conn. 36, 42, 440 A.2d 782 (1981). In the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children of divorce, the court must however take account of the parents' post behavior, since it must evaluate consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being. Seymour v. Seymour, supra, 711. (Emphasis provided.)
This court has had the benefit of a thorough family relations report.
From the evidence presented and based on the family relations report the court finds the following:
CT Page 11725 Currently, Mr. Keggi resides at 273 South Street in Middlebury, Connecticut. He shares this five bedroom owned home with his wife Mrs. Dorothy "Cookie" Keggi, his sepchildren, Jenny Dawson, age seventeen and Jamie Dawson, age twelve and his two children, Graham and Christian when they are there. The large home is in fair repair, adequately furnished and located in a quiet residential area of the town of Middlebury. Mr. and Mrs. Keggi share a bedroom, Jenny and Jamie each have their own bedroom and Graham and Christian share a bedroom.
 Mr. Keggi is an orthopedic surgeon in private practice in the town of Waterbury, Connecticut. He indicates that he typically works 7:30 a.m. to 6:30 p. m. Monday through Friday and is on 24 hour call every seventh week day and every seventh weekend from Friday to Monday. Mr. Keggi indicates that he has some flexibility with his daily schedule, aside from his on call obligations to the hospital. Mrs. Keggi currently does not work outside of the home and is available for childcare needs.
 Ms. Keggi resides at 65 Peddlers Drive in Branford, Connecticut. This town house condominium is in fair repair and adequately furnished. This three bedroom, owned home is located at the end unit of a fairly large complex. Ms. Keggi occupies one bedroom and Graham and Christian each have their own rooms when they are there.
 Ms. Keggi currently does not work outside of the home, although she indicates a desire to re-enter the work force on a part time basis.
SUMMARY OF ISSUES
 Mr. Keggi is seeking sole legal custody of the minor children. He indicates that Ms. Keggi has significant psychiatric issues that affect her ability to parent the children. Further, he states that Ms. Keggi, does not acknowledge and appropriately address the children's medical, social and emotional needs and is unable to subordinate her own needs to those of the children.
Ms. Keggi seeks joint legal custody of the minor children and primary residence with her. She indicates that Mr. Keggi is controlling and manipulating, that he CT Page 11726 does not co-parent and that he places adult burdens on the children. She further alleges that Mr. Keggi is prone to physical violence, is cold and not nurturing of the children and that he works long hours making him inaccessible to the children.
The court finds that there has been no credible evidence that the plaintiff is controlling and manipulating. There also has been no credible evidence presented that he does not co-parent and that he places adult burdens on the children. There further has been no credible evidence presented that he is prone to physical violence, is cold and not nurturing of the children.
The defendant has her first psychotic episode in 1993. This was approximately two years prior to the joint legal and physical custody agreement of the parties dated April 26, 1995. Her next episode was in 1998. She then had the February 1999 episode. She had stopped taking her Lithium for a few days immediately prior to the February 1999 episode. She now takes her medication regularly and sees here psychiatrist every two weeks for medication prescription. She never missed any of her medication between 1993 and 1999.
The children have been with the defendant since June 24, 1999 in accordance with paragraph 1 of the post-judgment stipulation of the parties dated June 29, 1999 coded #210. She continues to have a great relationship with the children. Except for the period of March 1999 through June 24, 1999, the children have been in the custody of the defendant since December 18, 1996. They have been properly cared for except when the defendant had her February 1999 episode. The children are behaving the same as they did prior to her February 1999 episode and do not show any adverse affects from the defendant's February 1999 episode.
In this case the court finds that both the plaintiff and the defendant are nurturing and loving parents.
One of the reasons that the family relations officer has recommended that the plaintiff have custody of the children is based on his determination that there is a symbiotic relationship between the minor child John Graham and the defendant. The court finds that there is no credible evidence that such a relationship exists.
The family relations report also indicates that the defendant CT Page 11727 has not followed through with medical advice. That involved her failing to follow through with counseling around 1997. After the pediatrician advised counseling the defendant arranged counseling at Yale. The therapist never told the defendant that there was anything wrong and the defendant terminated the counseling. There is no credible evidence that the failure to follow through with the recommendation of the pediatrician for counseling has had any adverse effect on any of the children.
The court finds that the defendant's psychiatric issues do not presently effect her ability to parent the children. The court further finds that the defendant properly addresses the children's medical, social and emotional needs and is able to subordinate her own needs to those of the children. The court further finds that the defendant is the better custodian of the children at the present time and that it is in the children's best interest that they remain in the custody of the defendant.
This court has considered the provision of § 46b-56(b) regarding the issue of custody and visitation and has considered the provision of § 46b-56a regarding the issue of joint custody.
The court finds that it is in the children's present best interest that they be in the custody of the defendant and therefore enters the following orders:
 ORDERS:
1. The plaintiff's motion for custody is denied.
2. The existing order of joint legal custody is ordered to remain in effect. The court further orders that primary physical residence of the children is to be with the defendant mother.
3. The defendant is to have final decision making regarding issues that result in an impasse between the parents.
4. The plaintiff is to have visitation with the children for three weekends each month from Friday after school until Sunday evening at 7:00 P.M. Those weekend visitations are to commence on the first, second and fourth Friday of each month.
5. The children are to be with the defendant the remaining weekends of each month as well as all other remaining times except as hereinafter stated. CT Page 11728
6. The plaintiff is to have four weeks of continuous time with the children in the summertime during which time the defendant shall have one full weekend visit. Additionally the parties are to alternate the school vacation weeks.
7. The parents shall share holidays on an alternating basis to start as follows:
 Labor day 1999 with the defendant from 9:00 A.M. to 7:00 P.M.
Thanksgiving 1999 with the plaintiff.
Christmas Eve 1999 with the plaintiff.
 Christmas Day 1999 with the defendant from 10:00 A.M. to 8:00 P.M.
New Years Eve 1999 with the plaintiff.
 New Years Day 2000 with the defendant from 10:00 A.M. to 8:00 P.M.
 Easter Sunday 2000 with the defendant from 9:00 A.M. to 7:00 P.M.
8. The holiday visitation schedule takes priority over the weekend visitation schedule.
9. The plaintiff is responsible for the pickup and delivery of the children during the time they are with him.
10. Paragraph 7 of the agreement of March 18, 1999 is vacated and in lieu thereof the court orders that the defendant provide to the plaintiff an authorization for him to obtain whatever records and reports the plaintiff wishes to obtain from the defendant's treating psychiatrist. The court further orders that the defendant notify the plaintiff of the name and address of any new psychiatrist with whom she commences treatment within ten days from the date such treatment commences.
Sidney Axelrod, Judge CT Page 11729