[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a fully contested action for dissolution of marriage and other relief brought to the judicial district of Danbury. The Court finds the following facts.
The plaintiff and the defendant, whose maiden name is Karen Biserni, were married at Katonah, New York, on June 16, 1996. At least one of the parties has resided continuously in the state of Connecticut for at least twelve months preceding the date the complaint or the cross-complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of this marriage: Louis Alexander Biserni Yao, born June 13, 1997. No other children have been born to the defendant wife since the date of the marriage of the parties. Neither party has received assistance from the state of Connecticut.
The plaintiff was born on March 13, 1973. This is the plaintiff's first marriage. He has completed high school and four years of college. The plaintiff suffers from asthma and is otherwise in good health.
The plaintiff is employed as an analyst for American Express. He has gross weekly wages of $1,336. He is presently on salary. He also receives a bonus of 5 percent of his salary, although that is not guaranteed. The gross of $1,336 includes the 5 percent bonus income. His employment also provides for health insurance for himself, the defendant and the minor child. Although not shown on his financial affidavit of April 10, 2000, he has life insurance through his employment in the amount of four times his annual salary. He has named his son as beneficiary of that insurance. CT Page 15128
The plaintiff has the following liabilities: (1) MasterCard $6,000; (2) law firm of Yamin Yamin $2,100; and (3) student loan $10,000. He owns a 1990 Buick with a value of $3,000 and a 1987 Cadillac with a value of $2,500. He has miscellaneous household furniture and furnishings with a value of $4,000 and bank accounts totaling $300. He has a 401K plan through his prior employment at MasterCard International, Inc. with a value of $19,000. His employment at MasterCard International, Inc. was from July 1, 1996 to May 4, 1999. He has been employed by American Express since May of 1999. If he had completed the full calendar year 1999 for MasterCard International, he would have earned approximately $50,000.
A judgment of strict foreclosure regarding the family home was entered on May 30, 2000 with a Law Day of June 26, 2000 against Richard Yao, as he is the sole owner of the equity of redemption. At the time of entry of judgment, the property was appraised at a value of $115,000, with the debt to the foreclosing party found to be $114,470.90, including attorney's fees of $1,500 plus costs of suit taxed at $1,209 and unpaid condominium common expense assessments. Title to the property vested in the foreclosing party on June 28, 2000. There is pending in the Superior Court for the judicial district of Danbury a motion for a deficiency judgment. There is pending in the Superior Court for the judicial district of Danbury a motion for a deficiency judgment. The defendant and the minor child and the defendant's mother lived in the family residence during the time the foreclosure action was pending.
The defendant was born on March 1, 1961. This is the defendant's second marriage. The defendant has completed high school and six years of college. When the parties were married, the defendant was employed as a counselor at Westchester County Health. She has not worked since the birth of their minor son. The defendant has an Associate Degree in Applied Science in Criminal Justice and a BA from Fordham University. She has done some graduate work regarding child development in guidance counseling and psychological counseling. She is in general good health. When she was employed at the Westchester Mental Health, she had an annual salary of approximately $23,500. Since leaving Westchester Mental Health, she has not been employed except for working a few weeks around Christmas, 1999, when she earned approximately $300. The costs for COBRA benefits for the defendant only will be $223.89 per month with an additional cost of $29.26 per month for dental and an additional cost of $6.12 monthly for vision coverage.
The defendant is presently unemployed. She has liabilities totaling $31,058 as listed on her financial affidavit of April 12, 2000. She owns miscellaneous furniture and fixtures with a total value of $2,000. The CT Page 15129 defendant has $500 in a pension plan from her prior employment at Mental Health Associates of Westchester. She also has approximately $100 in a bank account.
The plaintiff seeks an order of joint legal custody for the minor child with primary physical residence with the plaintiff. The defendant seeks an order of sole custody for the minor child.
This Court has had the benefit of a thorough and exhaustive Family Division evaluation report completed April 10, 2000 and an updated evaluation report completed October 24, 2000. Based on a combination of the testimony presented and the initial evaluation report, this Court incorporates by reference all of the "background information" found in the evaluation report dated April 10, 2000. This Court also incorporates by reference the "family assessment" portion of the Family Division report completed April 10, 2000.
The Family Division report of April 10, 2000 under "summary of issues" factually describes the various claims raised by the parties against one another. Based on the evidence presented, this Court finds that the claims by the defendant that the plaintiff had been physically and emotionally abusive towards her, that he had an explosive temper and was emotionally ill, that he had threatened to throw bleach at her, that he had hit her in the head with his fist and, on another occasion, with a towel rack, and that he had bit her on the neck, are not credible. Further, her claims that the plaintiff had obtained books on torture from the library and that he had stated to her that he was satan, that he had told her that pain on other people's faces excited him, and that he had punched their cat in the head, also are not credible. The Court further finds that the defendant's claim that the plaintiff videotaped her while she was naked, that he had done painful sexual things to her, that he had pulled on the stitches of her episiotomy, that he had suggested that they both have sexual relations with his former girlfriend, that he had told her that he was addicted to sex, that he had purposely urinated on their bed, that he had masturbated in the presence of the child, and that he had been self abusive also are not credible. This Court further finds that the defendant's claims that the plaintiff was irresponsible with respect to the quality of child care that he provided their child and with respect to safety issues, as well as her claims that their child often came home from visitation hungry and without having his diapers changed are further not credible. Finally, this Court finds that the defendant's claim that the plaintiff had used a toy telephone to teach the child to lie is not credible.
The conclusions and recommendations from the initial evaluation completed April 10, 2000 were as follows: CT Page 15130
 The parents' ability to cooperate and communicate with one another appeared to vary within a wide range. At times Richard and Karen Yao were able to share time with the child in what was described as a pleasant experience. This contrasts with the potential for incidents of disagreement that necessitated police intervention. However, it appeared necessary to have both parents authorized to act on the child's behalf. The concerns relevant to the mother's emotional health were seen as requiring further exploration and monitoring by the court. Over the past year and a half at least, Louis has primarily been in his mother's care with fairly limited time spent with his father despite the recommendations by Dr. Colen to expand visitation and a subsequent court ordered agreement to do so. It was felt that Louis would benefit from increased time with his father.
 It is recommended that a temporary order of joint custody be awarded and that the child primarily reside with his mother, contingent upon the mother being psychiatrically evaluated and complying with any and all prescribed medication and treatment recommended as a result of the evaluation. It is also recommended that the psychological evaluations completed by Dr. Robert Colen be made available to the psychiatrist and that release forms be signed allowing the psychiatrist to consult with Dr. Colen. It is recommended that the child be with his father each Tuesday and Thursday from 1:00 p.m. until 7:00 p.m. and each Saturday at 9:00 am until Sunday at 7:00 p.m. It is also recommended that the minor child undergo a speech and language evaluation and that any educational or treatment recommendations be implemented. It is recommended that the issues of custody, primary residence, and parental contact be reviewed in three months.
This Court also incorporates by reference the "family assessment" portion of the updated Family Division report completed October 24, 2000.
The conclusions and recommendations by the Family Relations counselor in the updated report dated October 24, 2000 were as follows:
 There appears to be a basis for concern regarding CT Page 15131 the mother's emotional health. It is recommended that her unsupervised contact with the child be contingent upon her participation and cooperation with psychiatric treatment. It is felt that she would benefit from a sustained period of psychiatric treatment. The father appears to be better equipped to accept the responsibilities of a custodial parent.
 It is recommended that the court grant the father sole custody of the child. It is further recommended that as long as the mother is unemployed, the child spend from Sunday at 7:00 p.m. until Wednesday evening with his mother contingent upon her making the child available for any school programming arranged by the father. It is recommended that the father pick up the child after his work hours on Wednesday. If the mother becomes employed outside of the house or when the child enters first grade, it is recommended that the schedule of contact be modified to allow equal weekend access to the child for each parent. It is recommended that Louis spend Thanksgiving with his father in even numbered years and his mother in odd numbered years. It is recommended that the Christmas holiday be alternated with Louis spending from December 24th to December 25th at 3:00 with his father in even numbered years and his mother in odd numbered years. It is recommended that Louis spend Mother's Day with his mother and Father's Day with his father. It is further recommended that each parent be entitled to effectuate two weeks of vacation with the child each year, subject to at least thirty days written notice to the other parent.
In determining the best interest of the child standard regarding custody and visitation, the court in Cappetta v. Cappetta, 196 Conn. 10,16, 17 (1988) stated in part as follows:
 The award of custody requires the trial court to make difficult and sensitive inquires into the relationships between adults and children. In the search for an appropriate custodial placement. the primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. Such a search requires the court to afford all interested parties an CT Page 15132 opportunity for a hearing concerning the qualifications of each person who is or may be a candidate for custody. It is essential to inquire into each person's parenting skills as well as his or her relationship with the child. [Emphasis provided.]
In discussing the best interest of the child standard, the court inBlake v. Blake, 207 Conn. 217, 224-225 (1988) stated in part as follows:
 In making a determination of custody, the trial court is "bound to consider the child's present best interest and not what would have been in her best interests at some previous time. [Emphasis provided.]
The Blake court also cited with approval the case of Yontef v. Yontef,185 Conn. 275, 283, 440 A.2d 899 (1981). The Yontef court held in part as follows:
 The test is not which parent was the better custodian in the past but which is the better custodian now. See, e.g., Trunik v. Trunik, 179 Conn. 287, 290, 426 A.2d 274 (1979); Spicer v. Spicer, supra 164; Simons v. Simons, supra, 350. Just as we have refused to adopt a conclusive presumption that a mother is always entitled to custody in preference to a father; see, e.g. Simons v. Simons, supra, 350; so also have we rejected any presumption that a parent's life style necessarily has an adverse effect on a child. Gallo v. Gallo, 184 Conn. 36, 42, 440 A.2d 782
(1981). In the exercise of its awesome responsibility to find the most salutary custodial arrangement for the children of divorce, the court must however take account of the parents' past behavior, since it must evaluate consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being. Seymour v. Seymour, supra, 711. [Emphasis provided.]
The evaluation report dated October 20, 2000 of the defendant by Dr. Mark Ligorski states in part as follows:
 As far as her story goes, there was no way in the session to determine the accuracy of what she had to say. If her stories were true, then she is describing someone, in the person of her husband, who has significant problems with anger, self-control and CT Page 15133 narcissism and her behaviors can be seen in the light of a woman who has been repeatedly traumatized and is frightened. If her stories are false, then we are dealing with someone who at best is deceitful and at worst delusional.
From all the evidence presented, the Court finds that the plaintiff did not emotionally abuse or physically abuse the defendant. The Court further finds that the plaintiff does not have significant problems with anger, self control or narcisstsm. The Court further finds that the behaviors of the defendant cannot be seen in the light of a woman who has been repeatedly traumatized and is frightened. From all the evidence presented, the Court finds that the defendant's stories regarding her treatment by the plaintiff can best be described as being false.
In his report of October 20, 2000 regarding the plaintiff, Dr. Ligorski states in part as follows:
 Impression: The assessment of Richard's condition, as with his wife's, is primarily reflected in how accurate and honest they are as reporters. His presentation, in contrast to his wife's, was unremarkable and fairly consistent with what one would expect in this sort of setting and under these conditions, i.e., the need to present oneself in the best and the other person in the worst possible lights, respectively.
 If he turns out to have not been telling the truth about what transpired between himself and Karen with her story being the true one, then he is revealed as a sociopath of the first degree given his calm and earnest demeanor, in marked contrast to the quite awful picture painted by his wife.
 On the other hand, should his story be the more accurate one, he has had to deal with a great deal of disruption and erratic behavior. While one can raise questions about his choice of Karen (in this version of the truth) and what this says about his character and emotional needs, nothing about that would suggest that he was in any way a danger. The former story, however, would identify him as a definite risk to both his wife and child. Again, the Court's ability to substantiate the stories told by Richard and Karen is therefore crucial in making a final decision. CT Page 15134
 Finally though, if one assumes him to be telling the truth, there was no evidence of a significant psychiatric disorder of any kind.
The Court finds from all the evidence that the plaintiff has been telling the truth regarding his relationship with the defendant.
Throughout the pendency of this dissolution action, the defendant has repeatedly failed to allow the plaintiff to exercise court ordered visitation rights. In the event the plaintiff were to have custody of the minor child, he would be more likely to see to it that the defendant was allowed to exercise her court ordered visitation rights. From all the evidence presented, this Court finds that it is in the child's present best interest that an order enter granting custody to the plaintiff.
Counsel for the minor child agrees with the recommendation of the October 24, 2000 updated Family Division report regarding custody and visitation.
This Court has considered the provision of § 46b-56 (b) regarding the issue of custody and visitation and has considered the provision of § 46b-56 (a) regarding the issue of joint custody, and has considered the provisions of § 46b-56 (c) and § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provision of § 46b-62 regarding the issue of attorney's fees, and has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81 regarding the issue of assignment of property.
The Court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY, VISITATION AND SUPPORT
1. The Court enters an order of sole custody of the minor child in favor of the plaintiff.
2. During the period the defendant is totally unemployed, the child is to spend from Sunday at 7 p.m. until Wednesday evening with the defendant contingent upon the defendant making the child available for any school CT Page 15135 programing arranged by the plaintiff. The plaintiff is to pick up the child after his work hours on Wednesday. In the event the defendant becomes employed outside of the home or when the child enters first grade, whichever event first occurs, the schedule of visitation may then be modified based on what is in the best interest of the minor child. The holiday and vacation visitation schedule is as follows:
 A. The minor child is to spend Thanksgiving with the plaintiff in even numbered years and with the defendant in odd numbered years.
 B. The Christmas holiday is to be alternated with the child spending December 24th to December 25th
at 3 p.m. with the plaintiff in even numbered years and with the defendant in odd numbered years.
 C. The child is to spend Mother's Day with the defendant and Father's Day with the plaintiff.
 D. Each parent is to have two weeks of vacation with the child each year, subject to at least thirty days advance written notice to the other parent.
3. The defendant is presently unemployed, and therefore, the Court does not enter any order for her to pay support at this time.
4. The plaintiff is to provide health insurance for the minor child, and he is solely responsible for all unreimbursed medical and dental expenses and day care expenses.
5. The Court orders that neither party permanently remove the child from the state of Connecticut without prior court order. The Court further finds that it has jurisdiction over the minor child under the Uniform Child Custody Jurisdiction Enforcement Act.
6. The plaintiff has a right to claim the minor child as a dependent on his federal and state income tax returns.
7. The custody and visitation orders entered herein are effective January 2, 2001. The existing pendente lite orders remain in effect until January 2, 2001 regarding custody and visitation and support.
C. BY WAY OF PROPERTY
1. All liabilities shown on the plaintiff's financial affidavit are to be paid by the plaintiff, and he is to hold the defendant harmless CT Page 15136 therefrom.
2. All liabilities shown on the defendant's financial affidavit are to be paid by the defendant, and she is to hold the plaintiff harmless therefrom.
3. The plaintiff is solely responsible for any deficiency judgment from the foreclosure of the marital residence located at 136 Pembroke Road, Unit 16, Danbury, Connecticut.
4. The plaintiff's 401K plan through MasterCard International, Inc. is ordered divided equally between the parties by QDRO. The plaintiff is responsible for the cost of preparing the QDRO. The Court retains jurisdiction over any issues that may arise involving the QDRO.
5. The defendant's pension plan at Mental Health Association of Westchester is awarded solely to the defendant.
6. The approximate $100 that the defendant has in bank accounts is awarded to the defendant. She is also awarded all furniture and fixtures in her possession.
7. By stipulation of the parties, various of the defendant's personal memorabilia in the plaintiff's possession is to be turned over to the defendant. All remaining household furniture and furnishings in the plaintiff's possession is awarded to the plaintiff as well as the bank accounts shown on his financial affidavit.
8. The two motor vehicles shown on the plaintiff's financial affidavit are awarded to the plaintiff.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either the plaintiff or the defendant.
2. The Court finds that the reasonable attorney's fees due for counsel for the minor child is $3,000 and orders that amount divided equally between the parties. Each party is to pay his share at the rate of $125 per month commencing January 2, 2001, and on the second day of each month thereafter.
E. BY WAY OF ALIMONY
1. The plaintiff is to pay to the defendant alimony in the amount of $150 per week until the earliest of the following events: (a) the CT Page 15137 defendant's remarriage; (b) the death of the plaintiff or the defendant; (c) September 1, 2002. The length of alimony is non-modifiable beyond September 1, 2002. The minor child will be enrolled in kindergarten as of September 1, 2002, and the defendant will therefore have less need to remain home with the child during the time she has visitation with the child after that date.
2. The provisions of §§ 46b-86 (a) and 46b-86 (b) are applicable.
3. The plaintiff is to make available health insurance for the benefit of the defendant in accordance with COBRA, if elected by the defendant, with the cost of said health insurance for the defendant to be divided equally between the parties.
F. MISCELLANEOUS ORDERS
1. The parties are to exchange copies of their federal and state income tax return within thirty days after such returns have been filed for so long as there is an outstanding alimony order or an outstanding support order or any arrearage relating to either orders.
2. The plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature, who in turn, is to send it to counsel for the minor child for signature and filing.
Axelrod, J.