REAL J. F. CHARPENTIER *v.* CATHY A. CHARPENTIER
(13221)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued December 4, 1987—decision released February 2, 1988

*Kimberly A. Knox,* with whom was *William R. Moller,* for the appellant (defendant).

*Thomas S. Luby,* for the appellee (plaintiff).

SHEA, J. In this appeal from a judgment dissolving the marriage of the parties, the defendant wife, Cathy A. Charpentier, claims an abuse of judicial discretion by the trial court in determining the financial orders concerning child support and distribution of the marital property. We find no error.

The parties were married on October 2, 1967. During the marriage five children were born, ranging in age from five to twelve at the time of judgment. The marriage was dissolved on August 22, 1986, by the Honorable Joseph W. Bogdanski, state trial referee, acting as the trial court. The trial court awarded the plaintiff husband, Real J. F. Charpentier, custody of the five children, and granted a right of reasonable visitation to the defendant wife. The defendant has not contested the custody decree.

The court's financial orders were as follows: (1) the defendant was ordered to pay the plaintiff $20 per week per minor child as child support; (2) both parties were directed to share equally the cost of maintaining medical insurance for the children; (3) each party was ordered to assume the debts listed on his own financial affidavit; (4) the interest of the defendant in the parties' residential home in the town of Berlin was assigned to the plaintiff, subject to the existing mortgage, which became the sole obligation of the plaintiff; (5) the defendant was ordered to transfer her interest in a lot in Warner, New Hampshire, to the plaintiff; (6) the contents of the home were assigned to the plaintiff, except for the defendant's personal belongings and bedroom furniture; (7) each party was ordered to pay one half of the legal fees of counsel for the children in

the total amount of $3000. On appeal, the defendant challenges all of these financial orders except for the one concerning the assumption of personal debts.

I

A major contention of the defendant is that the trial court's financial orders were impermissibly influenced by her admitted lesbian sexual preference. We conclude that the trial court's financial orders were not so premised, but instead reasonably reflected the economic burden imposed on the plaintiff by the custody decree as the parent primarily responsible for raising five young children.

The defendant does not dispute engaging in an adulterous relationship with another woman, M, before the parties' separation. In December, 1984, while the plaintiff was hospitalized for seven days for viral pneumonia, the defendant moved M into the family home to live there amidst the five children. When the plaintiff returned home to recuperate, the defendant would leave each night to spend time with M. In February, 1985, the plaintiff moved out of the house. Within one day, the defendant had invited M again to live in the house with her and the children.

There is some indication in the record that the trial court might have been influenced by the defendant's lesbian sexual preference when it awarded custody of the children to their father, although the trial court was also much concerned with the abusive behavior of M toward the children. The trial court stated: "In spite of the dissolution action, there does not appear to be hostility or anger displayed by the parties to each other, and it is apparent that both parents deeply love their children. It further appears that both parents are capable of raising five children alone. The problem here is the presence in the homestead of a third party, [M]. The children all blame her for the breakup of their par-

ents' marriage. They feel they are second best to her, and feel that their mother prefers to spend more time with her than with them. They have spoken of their concerns regarding the open display of affection between two lesbian women in the home and their desire not to have this done in front of their friends. As the children grow older they will have to struggle with a home life that is quite different from those of their peers. [M] has displayed difficulty in dealing with stress by impulsively attempting suicide or requesting in-patient hospitalization. The children have complained of her yelling at them and slapping them. It is not clear at this time how much stress and tension she can tolerate, and a household of five children can produce a chaotic environment."

We construe the references in the memorandum of decision to the defendant's lesbian relationship as indicating concern of the trial court not with her sexual orientation per se but with its effect upon the children, who had observed in the home inappropriate displays of physical affection between their mother and M while M had resided with them. In addition, the court was fearful of the consequences of permitting M, who had twice been institutionalized for mental problems, had been diagnosed as a schizophrenic, and had a history of suicide attempts, to continue to reside in the home with the children, especially when left alone to care for them. In awarding custody, the trial court ordered that M not be present during the defendant's visitation.

Even if we accept the defendant's argument that the trial court took her lesbian sexual preference into account in determining custody, a part of the decree that the defendant no longer contests, there is no indication in the record that the trial court considered this factor in awarding child support or in distributing the marital property. We cannot infer from the fact that most of the marital assets were assigned to the plain-

tiff that the defendant was being penalized for her sexual orientation, as she claims. There is no reason to suppose that, if she had left the family in order to live with another man and custody was given to the plaintiff under similar circumstances, the financial orders would have been any different. It has not been unusual for courts to award a wife virtually all the marital assets as well as child support when a husband has broken up a marriage by committing adultery, and custody of the children has been awarded to the wife. In *Beede v. Beede,* 186 Conn. 191, 193, 440 A.2d 283 (1982), where the trial court found that the marriage had broken down irretrievably because the husband had committed adultery, this court affirmed (p. 197) as "amply supported by the record" an order assigning to the wife, who had been given custody of four children, almost all the marital assets, including the defendant's interest in the family residence. The fact that a custodial parent normally bears the principal responsibility for raising and educating children, whose needs demand primary consideration, may well justify a division of family assets that would otherwise appear disproportionate and unfair. There is no basis whatever, therefore, for the claim raised by the defendant of discrimination because of sexual preference.

## II

We must now review the financial orders in this case to determine whether there was an abuse of discretion, aside from the defendant's claim that the trial court was influenced impermissibly in formulating them by her sexual preference. "The scope of our review 'of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did.' " *Leo v. Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); *Beede v. Beede,* supra, 194. "In determining whether the trial court could reason-

ably conclude as it did on the evidence before it, every reasonable presumption should be given in favor of the correctness of its action." *Leo* v. *Leo,* supra, 4–5. "The conclusions which we might reach, were we sitting as the trial court, are irrelevant. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980)." *Carpenter* v. *Carpenter,* 188 Conn. 736, 741, 453 A.2d 1151 (1982).

The defendant contends that the trial court's financial orders constituted an abuse of discretion because she left a nineteen year marriage with virtually no assets. She also contends that the child custody payments were onerous in view of the fact that the plaintiff earned a net income of $426.82 per week while she earned only $287.62 per week. The defendant, however, also had an additional income of $100 per week from M with whom she shared her living quarters. She owned two vehicles, a 1986 Ford Escort valued at $9000 and a 1970 Maverick. The plaintiff owned only a 1978 Dodge van. More importantly, the defendant herself testified that she expects to earn $30,000 in a few years as an electronic technician. The trial court was entitled, under General Statutes § 46b-81 (c), concerning the assignment of marital property, to consider "the opportunity of each [spouse] for future acquisition of capital assets and income." Under General Statutes § 46b-84 (b), concerning child support awards, the trial court was entitled to consider her anticipated earnings in evaluating the "occupation, earning capacity . . . and employability of each of the parents." When the defendant's future earning capacity is considered, neither the support order at $20 per week for each of five children nor the unequal division of property is unreasonable.

As we have indicated above, it is not unusual for a trial court to award the family home to the custodial parent who must raise several young children. *Beede*

v. *Beede,* supra, 192–97. The trial court could reasonably have found that the value of the equity in the parties' residence was $17,000, in accordance with the plaintiff's financial statement.[1] This is not a great deal of money when the burdens associated with housing, raising and educating five children are considered. The plaintiff must assume the heavy burden of paying the mortgage of $53,000[2] on the family residence. It was clearly appropriate to give the plaintiff most of the furniture in the home in which the children live. While the financial orders concerning child support, medical insurance, and payment of the children's legal fees may be initially burdensome on the defendant, the court was justified in finding that she had substantial future earning capacity, approximately equal to that of her husband, who is burdened with the obligation to support the children. Also, the award of the lot in Warner, New Hampshire, which has an undisputed equity value of $6000, was not unreasonable in view of the financial needs of the five children, and the defendant's future earning capacity.

There is no error.

In this opinion the other justices concurred.

---

[1] The defendant estimated that the equity value in the home was $50,000. The trial court did not make a finding concerning the equity value of the home. This court, in determining whether a trial court could reasonably conclude as it did on the evidence before it, allows every reasonable presumption in favor of the correctness of its action. *Leo* v. *Leo,* 197 Conn. 1, 4–5, 495 A.2d 704 (1985). Therefore, we will assume that the trial court accepted the estimate in the plaintiff's financial statement that the equity value of the home was $17,000. The defendant failed to ask the trial court to articulate its findings concerning the equity value of the home, or to issue a special finding on that point.

[2] This mortgage balance includes an arrearage of $2200 which accumulated while the defendant and M lived in the family home without making the periodic mortgage payments.