MARY JANE KOLKMEYER *v.* WILLIAM J. KOLKMEYER, JR.
(6918)

SPALLONE, O'CONNELL and NORCOTT, Js.

Argued February 17—decision released May 9, 1989

*Abraham I. Gordon,* with whom was *Ronald D. Japha* and, on the brief, *Richard S. Scalo,* for the appellant (defendant).

*Gaetano Ferro,* with whom, on the brief, was *Gina A. Pasquini,* for the appellee (plaintiff).

NORCOTT, J. The defendant, William J. Kolkmeyer, Jr., appeals from the decision of the trial court on the plaintiff's motions for contempt and for child support. He claims that the trial court erred in not making the orders for child support payments retroactive and in determining the amount of child support the defendant is to pay. We find error in part.

The record reflects the following facts. The marriage of the parties was dissolved on January 3, 1984. There are two minor children of the marriage. Pursuant to the terms of the dissolution judgment, the defendant

was to pay $385 per week as unallocated alimony and child support. These payments were to continue until the occurrence of one of several specified events, one of which was the remarriage of the plaintiff. The plaintiff remarried on July 18, 1987. On July 31, 1987, the defendant filed a notice with the trial court stating that under the terms of the dissolution agreement, his obligation to pay unallocated alimony terminated on the date of the remarriage. He then voluntarily began to pay the plaintiff $100 per week as child support.

On August 7, 1987, the plaintiff filed a motion for contempt for the defendant's failure to pay $385 per week for child support, and, on October 26, 1987, filed a motion for child support requesting $385 per week. On March 21, 1988, the trial court, after a hearing on the motions, ordered the defendant to pay the plaintiff child support in the amount of $325 per week from the date of the order until September 1, 1988, at which time the payment would be reduced to $275 per week. The court also ordered that for purposes of calculating arrearages the original order for $385 per week remained in effect until the date of the new order.

I

The defendant's first claim is that because the judgment of dissolution provided that his payments to the plaintiff terminate on her remarriage, the trial court erred in ruling that payments of unallocated alimony and support continue beyond the date of remarriage until the date of the order for child support. The dissolution decree incorporated an oral stipulation by the parties. Paragraph five provides "The Defendant will pay to the Plaintiff as unallocated alimony and child support the sum of THREE HUNDRED EIGHTY-FIVE ($385.00) DOLLARS per week, which will continue until: (a) the Plaintiff dies; (b) the Plaintiff remarries; (c) both children should die; or (d) the Plaintiff lives

with a man under such circumstances as would lead a reasonably prudent person to believe that they are cohabiting; (e) either child should die during minority or should become emancipated or, in any event, when the oldest child reaches eighteen (18) years of age, at which time the Defendant can ask for a reduction in the unallocated alimony and support, without any showing of substantial change of circumstances; (f) all alimony and support payments shall stop in any event when the youngest child reaches the age of eighteen (18) years and said termination of alimony and support shall not be modified to extend said date, under any circumstances."

The defendant argues that under section 5 (b) the plaintiff's remarriage terminated his obligation to make any further payments of unallocated alimony and support pursuant to the decree. The plaintiff contends that it was incumbent on the defendant to ask for a reduction in his payment to reflect the termination of alimony payments. In support of her position, the plaintiff looks to 5 (e), which provides that in the case of the death or emancipation of either child before age eighteen or when the oldest child reaches age eighteen, "the Defendant can ask for a reduction in the unallocated alimony and support, without any showing of substantial change of circumstances." The plaintiff claims that this requirement for action on the part of the defendant applies to all events set out in paragraph five. The defendant contends that the phrase applies only to subsection (e) and that if it had been the intent of the parties to require such action on the occurrence of any of the events triggering termination of payments by the defendant, they would have explicitly and clearly said so. He argues that the plain language of the agreement makes section 5 (b) self-executing.

The trial court found that there was ambiguity in the agreement on which the decree was based. In inter-

preting paragraph five, the court determined that the section was not self-executing and that someone had to take action to have the amount of child support set by the court. Contrary to the statements by both parties, the record indicates that the court did not put the burden exclusively on the defendant, but rather held that either the defendant could move for reduction of the payments, or the plaintiff could file a motion requesting child support. The court also held that any reduction would take effect on the date such motion was decided, in this case on the date it decided the plaintiff's motions for child support and for contempt. On appeal, the defendant does not dispute his responsibility for paying child support, but does take issue with the trial court's interpretation of the agreement and its ruling on the effective date of its order for child support.

"Where a judgment incorporates a separation agreement, the judgment and agreement should be construed in accordance with the laws applied to any contract. The trial court's construction of the agreement is an issue of fact subject to review under the limited standard of whether it is clearly erroneous. . . . The interpretation of the agreement is a search for the intent of the parties. This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained." (Citations omitted) *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 500–501, 519 A.2d 1237 (1987).

The problem with the original judgment in this case is not that it is unclear whether alimony payments would cease on the remarriage of the plaintiff, but rather that it did not clearly provide for a procedure for adjustment of the defendant's payments upon that remarriage. We conclude that the trial court's decision that one of the parties was required to petition the court to set the amount of child support is a legally sound

and proper interpretation of the judgment. Although the judgment provided for the termination of the weekly payments of $385 for unallocated alimony and support on the plaintiff's remarriage, only the alimony portion of such payments terminated. As the defendant concedes, he was required to continue to contribute to the support of his children. See General Statutes § 46b-84. It was not proper, however, for him unilaterally to determine how much child support he was to pay.

Orders for unallocated alimony and child support are severable, and adjustments may be made when circumstances require. See *Miller* v. *Miller,* 181 Conn. 610, 613–14, 436 A.2d 279 (1980); *Sweeny* v. *Sweeny,* supra, 500–503; *Matles* v. *Matles,* 8 Conn. App. 76, 81, 511 A.2d 363 (1986). In *Matles,* we noted that "the trial court was confronted with the resolution of an existing court order for unallocated alimony and support, and the fact that the defendant was no longer required to support the child who had reached his majority. There is no automatic resolution of this problem. Inherent in an order of unallocated alimony and support is that some portion of the order is attributable to the payor's obligation to support the child. When the obligation to support the child no longer exists, it becomes appropriate for the trial court to reexamine the facts and circumstances of the parties . . . . " *Matles* v. *Matles,* supra, 79. In *Sweeny,* we used similar reasoning to determine the portion of an award of unallocated alimony and support attributable to child support when the children moved from the mother's home to that of the father. *Sweeny* v. *Sweeny,* supra. We conclude that the reasoning set out in *Matles* applies to the situation before us. The order for unallocated alimony and support can reasonably be construed as containing a provision for the termination of alimony upon the plaintiff's remarriage. It does not, however, contain a provision for a specific amount of child support to be paid upon

the occurrence of that remarriage. The trial court was therefore correct in holding that, upon motion of either party, it was incumbent upon the court to ascertain what part of the order was attributable to child support and enter an order for the payment thereof.

We do find error, however, in the trial court's determination that the order setting child support took effect on the day it decided the plaintiff's motions. The reasoning of the court that the original $385 weekly payment remained in effect until one of the parties acted is correct. This is so because some payment had to be made to support the children and the appropriate amount of that payment could only be determined by the court. Thus, to protect the children, the original payment remained in effect until the court determined the new amount. Once that new amount was determined, however, the proper resolution of the issue of arrearage was to apply an amount of child support retroactively to the date of the plaintiff's remarriage, giving the defendant credit for the $100 per week paid during that time. This would accomplish the desired end of having the defendant pay the proper amount of child support without having to pay alimony to a remarried spouse, in contravention of the agreement of the parties as set out in the judgment.

The record is clear that the court set two amounts of child support to reflect the plaintiff's employment status. At the time of the court's order in March 1988, the plaintiff was not employed outside the home but rather was caring for the defendant's two children and a child of her second marriage born on January 20, 1988. She testified that she intended to return to paid employment after the summer. The court ordered support in the amount of $325 per week while the plaintiff was at home and $275 per week after she returned to work in September. Because the record indicates that the plaintiff was employed in various capacities

on a part-time basis from the time of her remarriage in July of 1987 until December of 1987 and not employed from late December 1987 until the time of the court order, it would not be appropriate to make either the $325 or the $275 payment retroactive to cover the period of July 18, 1987 to March 21, 1988. We therefore must remand the case to the trial court for a determination of the portion of the unallocated alimony and support payment attributable to child support for that period.[1]

## II

The defendant also claims error in the amount of child support the court ordered him to pay to the plaintiff. " 'The scope of our review "of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did." ' *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); *Beede* v. *Beede,* [186 Conn. 191, 194, 440 A.2d 283 (1982)]. 'In determining whether the trial court could reasonably conclude as it did on the evidence before it, every reasonable presumption should be given in favor of the correctness of its action.' *Leo* v. *Leo,* supra, 4–5. 'The conclusions which we might reach, were we sitting as the trial court, are irrelevant. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981); *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980).' *Carpenter* v. *Carpenter,* 188 Conn. 736,

---

[1] The plaintiff's reliance on *Sanchione* v. *Sanchione,* 173 Conn. 397, 378 A.2d 522 (1977) is misplaced. In *Sanchione,* the Supreme Court held that alimony could not be modified retroactively. This holding is inapposite to this case both because we do not have a motion for modification of alimony before us but rather a motion to set child support and because the reasoning of *Sanchione* in not modifying alimony retroactively was based on the position that alimony already accrued should not be modified. According to the terms of the parties' agreement, alimony ceased on the plaintiff's remarriage; thus, no alimony accrued between July 18, 1987 and March 21, 1988.

741, 453 A.2d 1151 (1982)." *Charpentier* v. *Charpentier,* 206 Conn. 150, 154–55, 536 A.2d 948 (1988); *Louney* v. *Louney,* 13 Conn. App. 270, 273, 535 A.2d 1318 (1988).

The defendant claims that the trial court ignored the plaintiff's earning capacity, relying on her voluntary unemployment, that the award was grossly disproportionate to the children's needs and that the court erred in not allowing questioning of the plaintiff's current husband regarding his income. A review of the record convinces us that the financial award ordered by the trial court was not an abuse of discretion but rather reflected due consideration of the appropriate criteria set out in General Statutes § 46b-84. We also conclude that there is no merit to the defendant's claim that the trial court precluded relevant questioning regarding the income of the plaintiff's husband.

There is error in part and the case is remanded for a determination of the amount of child support owed from the date of the plaintiff's remarriage until the date of the trial court's order.

In this opinion the other judges concurred.