******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENNETH V. CLARK *v.* MARY ANN CLARK
(AC 35543)

Sheldon, Keller and Harper, Js.

*Argued January 22—officially released May 27, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Malone, J. [dissolution judgment]; Emons, J. [orders].)

*Mary Ann Clark*, self-represented, the appellant (defendant).

*Opinion*

KELLER, J. The self-represented defendant, Mary Ann Clark, appeals from several decisions rendered by the trial court during postdissolution proceedings.[1] The defendant claims that the trial court erred in (1) appointing a new guardian ad litem for the two minor children of the marriage and ordering the parties to equally share in paying the fees owed to the prior guardian ad litem; (2) modifying prior postdissolution orders delineating how and when the plaintiff, Kenneth V. Clark, is permitted access to the health and academic records of the parties' children; (3) "forc[ing]" her to sign written authorizations affording the plaintiff access to medical and educational material related to the children; and (4) vacating what the defendant claims was an automatically stayed access order pending her appeal.[2] We dismiss the appeal as it relates to the first claim raised by the defendant and, with regard to the remaining claims raised by the defendant, we affirm the judgment of the trial court.

The parties were divorced on August 18, 2009, but various disputes have continued, unabated, involving the filing of hundreds of postjudgment motions and eight appeals.[3] This court's decision in *Clark* v. *Clark*, 127 Conn. App. 148, 150–51, 13 A.3d 682, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011), sets forth some of the facts and procedural history relevant to this appeal. "The plaintiff commenced this marital dissolution action in June, 2006. Following a trial, the court, by memorandum of decision filed August 18, 2009, dissolved the parties' marriage. The parties have two minor children, one of whom has special needs. The court awarded sole custody of the parties' two children to the defendant and ordered the plaintiff to pay the defendant unallocated alimony and child support in the amount of $5000 per month. The court ordered, inter alia, that the plaintiff maintain health insurance for the children at his expense so long as it was available through his employer . . . . The court also ordered the parties to list for sale their marital home in Greenwich and another property they owned in Boca Raton, Florida . . . . The net proceeds of the sales, if any, were to be divided 65 percent to the defendant and 35 percent to the plaintiff. . . . The court ordered that . . . the parties would share equally the obligation to pay the fees of the attorney for the minor children . . . and the fees of the guardian ad litem . . . to be paid from the proceeds of the sale of the parties' real estate prior to the parties receiving their respective shares. The plaintiff's attorney, the defendant's former attorney and the attorney for the minor child each hold mortgages on one or both of the properties to secure payment of their fees."[4] (Footnotes omitted.)

The dissolution judgment did not afford the plaintiff a right to visitation, but included orders that the plaintiff

get copies of all school information, medical information, and information related to the children's activities. The court also ordered that "[a]ny and all parent-teacher conferences, counseling sessions or meetings involving any aspect of the health, education or welfare of either child, information, scheduling or prepared appointments shall be provided by each parent to the other parent," and that "[b]oth parties may attend such events." The plaintiff, however, was ordered not to interfere with any of these matters whatsoever. The plaintiff was ordered to begin parent coaching to assist him in parenting the two children. The guardian ad litem was to contact a mental health professional to see if the professional was willing to begin working with the children and the plaintiff toward reunification.[5] The decree contemplated that the plaintiff should begin supervised visitation with the children when the mental health professional determined it was appropriate. A gradually increasing schedule of supervised visits was set forth as long as all mental health professionals agreed that it was in the best interests of the children, and, at the end of one year, the parties were ordered to review with the mental health professional future visitation between the children and the plaintiff and determine whether unsupervised and/or overnight visits were in the children's best interests.

On April 4, 2013, the parties appeared before the trial court, *Emons, J.* The plaintiff was represented by Attorney Kevin Collins and the defendant was self-represented. Also present were Attorney Sandra P. Lax, counsel for the minor children, and Attorney Dori-Ellen Feltman, guardian ad litem for the children. The hearing began with the defendant reporting to the court that the parties and the attorneys were "having meetings," and that they would report back to the court after they finished.[6] The same day, the court resumed the hearing and inquired if anything had been resolved as a result of the meetings between the parties and counsel. Feltman began by advising the court of the need to clarify certain court orders, stating, "I think it's important to clarify the current court orders. I think that there's some misunderstanding between the parties as to what or what is not allowed in terms of [the plaintiff's] contact with the children."

Feltman indicated that the plaintiff had not seen the children for quite some time, but she did not believe that there were any court orders in place preventing him from contacting the children in any way. She then mentioned a court order from Judge Shay, which she indicated was issued at a time when the older child was applying to boarding schools, that ordered the plaintiff not to contact the school being considered and not to interfere "so that the process in boarding school gets started." She did not, however, "take that to mean that at the present time, [the plaintiff] doesn't have the right to contact the schools for purposes of checking

in on the status of his children or contacting a physician to check in on the status of his children.'"[7] Lax, agreeing with Feltman, also indicated a need for clarification. Lax then referred the court to the "sole custody statute," General Statutes § 46b-56,[8] and indicated that it allowed the plaintiff contact for information about the academics, the health and the welfare of the children. Lax stated, "[T]he fact that there's sole custody [in the defendant] cannot and should not preclude the fact that [the plaintiff] can contact to find out how the children are doing." She then requested that the court "just reiterate the order that sole custody does not preclude the [plaintiff] from getting information pursuant to the statute." The court responded: "Ordinarily under most sole custody orders it would not preclude them."

The defendant then indicated to the court that there was no problem with the plaintiff getting information, that she was already providing the plaintiff with information from the schools and health providers, and that there had never been a disruption in his receipt of that information.[9] When the plaintiff's counsel requested that the defendant, as sole custodian, be ordered to sign release authorizations, the defendant expressed a willingness to sign so that the plaintiff's counsel could contact providers directly, stating, "I've already gotten authorizations. I've got contact sheets with names and numbers, and they're expecting your call." The plaintiff's counsel then responded, "Mr. Clark's call," to which the defendant replied, "I can also add that to it, but . . . ." The court then indicated, "No, hold on. Mrs. Clark, I don't know what it is that you have. I'm going to order that you sign authorizations for [the plaintiff] and/or his attorney to contact all therapists that are involved, all schools, all health providers, anyone who is providing . . . the [attorney for minor children], the [guardian ad litem] and anyone who is providing services to the boys." Feltman offered to draft the release authorizations.

The defendant expressed reservations about the order and raised an unrelated concern about the plaintiff's prior access to one former provider that resulted in a payment issue and the ultimate loss of that provider. She also raised an unrelated concern that insurance reimbursements directed to the plaintiff for the children's medical bills were not being forwarded to her, although she had advanced payment to the providers for many of the bills. The court indicated that this issue was not properly before it, but reassured the defendant by making it clear to the plaintiff that he must "do everything with regard to the payments and the billing on the up and up."

At this point in the proceeding, Feltman informed the court that she had not been officially retained by the parties as guardian ad litem for the children and that there had been no court order with respect to her

fees. Although the defendant argued to the court that she did not have the means to pay one half of Feltman's $7500 proposed retainer or her hourly rate of $375, the court ordered the parties to split the retainer equally and pay it no later than May 1, 2013. The court then indicated it would deal with a "report back" at the next short calendar on the issue of permitting the plaintiff contact with the children's providers.

On April 5, 2013, the defendant filed this appeal from the court's orders that she pay one half of Feltman's $7500 retainer fee and that she sign release authorizations allowing the plaintiff to obtain information regarding the children directly from their schools, therapists, and other health care providers.

On April 11, 2013, the parties, the plaintiff's counsel, Feltman and Attorney Louise Truax, on behalf of Lax, the attorney for the minor children, who was unable to be present, appeared before the court. The court indicated that it had "sua sponte called this meeting today." The court began by indicating its concern about the likelihood of funding for Feltman's service as the guardian ad litem, and vacated Feltman's appointment. Feltman was replaced with Attorney Jill Plancher of Connecticut Legal Services as guardian ad litem for the limited purpose of communicating between the parties and a mental health professional, Dr. Sidney Horowitz, whom the court indicated would be seeing both children in order to determine the feasibility of reunification with the plaintiff and to provide a study to the court. Feltman then indicated to the court that she had prepared release authorizations for the defendant to sign pursuant to the court's order during the prior hearing on April 4, 2013. The defendant indicated that release authorizations already were in place, and the court ordered her to print them and bring them back after a recess. The plaintiff's counsel next advised the court that an appeal had been filed after the April 4, 2013 hearing, but that Feltman "has done work on this matter. I think that she probably intends to file an affidavit of fees for her services thus far . . . ." The court responded: "I have no problem with that. We'll straighten that out." The court then noted: "The appeal stays only the order that [the defendant] pay half of the fees for Attorney Feltman. . . . So, I don't think much is stayed in light of that appeal."

The defendant then argued to the court that she believed that her appeal of the April 4, 2013 orders also stayed the court's order to provide release authorizations to the plaintiff, but the court disputed her position, indicating, "[i]t may be on appeal but it's not subject to the same type of stay that the other order might be. . . . I will entertain a motion to terminate the stay if there is one on that issue; I don't think there is one."

The plaintiff's counsel and Feltman then indicated to the court a concern that the defendant had instructed

the children's schools not to give information to the plaintiff. The defendant indicated that this was not true, but admitted that she had given those instructions pursuant to a "previous order." The court noted, referring to Judge Shay's August 8, 2011 order, that "[t]here was a previous order in the file relating only, relating only, it's my understanding, to [the older child's] acceptance . . . [a]nd the . . . [a]dmission process." The court then asked the plaintiff's counsel to attempt to communicate with the school that week and, if for any reason, the schools would not communicate with counsel on behalf of the plaintiff, the court would order releases again. The defendant then offered to sign a release for the plaintiff's counsel to have access to school information. When the plaintiff's counsel indicated that he was going to tell the school that the court had ordered that counsel could have access, the court stated, "I have not issued that order. . . . I'm relying on the court file itself. I do not believe that based on the document, the orders of Judge Shay, that your client at this particular time is precluded from communicating with the schools, the health care providers of any of those people. I don't believe that that's the case; that's why I want you to try to communicate with the school. . . . If for any reason [the defendant] has refused to allow the school to communicate with you, we will remedy that on the 22nd of May." The plaintiff's counsel then indicated that he intended to file a motion for relief from the stay and requested that it be written in on May 22, 2013. The court permitted this.

The court then asked the defendant whether she had any reason to believe that the plaintiff could not communicate directly with the schools, therapists or treating doctors. The defendant indicated that it was her belief that the plaintiff could not contact anyone at the schools and that the schools had been relying on Judge Shay's prior order, which had been provided to them. The court then stated, "[The August 8, 2011] order no longer exists. I am now changing the order, I am modifying the order to provide [the plaintiff] with immediate access to the [older son's] [s]chool, any school that the younger son goes to, any and all therapists and anyone related to the health, education and welfare of both children." After the defendant indicated that she objected to the plaintiff directly contacting the school, as there had been a problem in the past, the court stated, "I am now changing and modifying that order. I am going to give [the plaintiff] complete and thorough access to all schools, all treaters, all therapists, for any and all reason."

After the court indicated that it would provide the plaintiff with a copy of a transcript, the court reminded the defendant that it soon expected to receive the signed release authorizations that had been discussed previously in the hearing. The following colloquy then occurred between the defendant, Feltman, and the

court:

"[The Defendant]: [The signed release authorizations] don't have a bearing now because you've created the order which negates the need.

"[Feltman]: I do have the authorizations prepared, Your Honor.

"The Court: Are you prepared to sign them, Mrs. Clark?

"[The Defendant]: You don't need it; you gave him the order.

"The Court: Mrs. Clark, are you prepared to sign—

"[The Defendant]: I have to see them before I can say that I can.

"The Court: Fine. Take a look at them, please. Take a look at them, please.

"[The Defendant]: Why are they necessary if the orders—

"The Court: Ma'am, take a look at them and come back to this court and tell me, please, whether or not you will sign them.

"[Feltman]: Your Honor, the authorizations are necessary because, as [the defendant] has legal custody, the health care providers require them. I spoke to the therapist about that. He wants this authorization because [the defendant] has sole legal custody.

"The Court: Are you going—I want you to take a look at them and report back to the court that you either will or will not sign them. If you do not sign them I want to know why.

"[The Defendant]: Okay."

The court then ordered that no one was to leave until the defendant either provided the plaintiff with signed release authorizations or provided an explanation to the court as to why she was refusing to sign such authorizations. Further discussion then ensued during which the defendant again expressed concern about health insurance reimbursements not being forwarded to her by the plaintiff and about who would pay for copies that the plaintiff received. The court resolved those concerns by again reminding the defendant that the issue of reimbursements was not before the court and by advising her that the plaintiff was responsible for paying for his own copies. The court then indicated, "What we are doing is modifying Judge Shay's order to give [the plaintiff] access to all information regarding health, education and welfare. That means all schools, all providers, all mental health providers." The defendant again insisted that she had provided the plaintiff with all information to date. The court stated, "And I'm not contesting whether he's received copies. Now, he does not have to go through you, he can go directly on

his own." At the end of the hearing, the court concluded, "So, I've made my rulings, I'll ask you to sign your releases, provide copies. In the event that the releases are not signed, please let me know. Only if they're signed, you're free to leave the courthouse. If you have not signed them, stick around and we'll have another round. Okay?" The court also reminded all present that there would be another status conference on May 1, 2013.

No further discussions concerning the release authorizations took place on April 11, 2013. The defendant admits that she signed the authorizations, but claims that she was forced to do so. On April 15, 2013, the defendant amended her appeal to challenge the court's April 11, 2013 order that she sign the release authorizations despite the stay that she claims was created by her appeal from the April 4, 2013 access order, and to challenge the order that Horowitz conduct an evaluation. Additional facts and procedural history will be set forth as necessary.

I

First, the defendant claims that the trial court erred in (1) appointing Feltman as guardian ad litem and (2) ordering that the parties equally share the cost of her fees, amounting to $3000, without first having reviewed the parties' financial affidavits. We will address each aspect of the claim in turn.

The facts underlying this claim are as follows. At the April 11, 2013 hearing, the court vacated Feltman's appointment because it was concerned about the likelihood that she would not receive payment for her work as guardian ad litem. The court replaced Feltman with a legal aid attorney, and did not discuss payment of the new guardian ad litem's fees. After the court was advised that Feltman might be submitting an affidavit for fees that were based on the work she had performed to date, the court indicated that it would address the issue of what fees she might be owed for her work prior to her removal by indicating, "I have no problem with that. We'll straighten that out."

A

Insofar as the defendant appeals from the decision of the court to appoint Feltman as the guardian ad litem, the record reflects that the court vacated that order. As the trial court already has granted the defendant the relief she is seeking on appeal, an order vacating Feltman's appointment, we dismiss as moot the portion of the defendant's appeal challenging Feltman's appointment. The court's order removing Feltman completely displaced any prior order appointing her. Accordingly, this portion of the defendant's appeal is moot because "there is no action that we can take that can have any practical effect on the judgment under appeal." *Upjohn Co.* v. *Zoning Board of Appeals*, 224

Conn. 106, 110, 616 A.2d 798 (1992).

B

The defendant also challenges what she characterizes as an order of the court requiring her to pay one half of Feltman's fees, which were incurred before the court vacated her appointment as guardian ad litem. Specifically, the defendant claims that on April 11, 2013, the court required the parties each to pay 50 percent of Feltman's fees, amounting to $3000. It does not appear from the record, including the court file and the transcript of proceedings, that the court made any such order on that date. Rather, the court indicated only that it was going to address the amount of fees actually owed to Feltman at some later time.[10] In vacating Feltman's appointment, the court's previous, ancillary order to pay her retainer, which would have covered her fees for an unspecified time period, became a nullity, and the court properly indicated that it would only consider payment for work performed prior to her removal as guardian ad litem. The defendant is unable to prevail on this claim because it is based on a mischaracterization of the record.

Additionally, if we view the claim as being based on the court's statements made up to and including April 11, 2013, and interpret such statements as indicating that the defendant was obligated to pay Feltman a portion of her undetermined attorney's fees incurred until that date, the claim is not based on a final judgment. In situations in which a trial court has issued an award of attorney's fees, but has not made a finding as to the amount of the award, we have held that such an attorney's fees award does not constitute an appealable final judgment. See *McKeon* v. *Lennon*, 131 Conn. App. 585, 611, 27 A.3d 436 (appeal from order awarding attorney's fees dismissed for lack of final judgment because, at time appeal was filed, amount of those fees had not been conclusively determined), cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011); *Sullivan* v. *Brown*, 116 Conn. App. 660, 663, 975 A.2d 1289 (same), cert. denied, 294 Conn. 914, 983 A.2d 852 (2009). Because the court, on April 11, 2013, indicated that it would determine the amount owed to Feltman at some later time, this portion of the defendant's appeal challenging an award of fees to Feltman is dismissed for lack of a final judgment. "The lack of [a] final judgment . . . implicates the subject matter jurisdiction of this court. . . . If there is no final judgment, we cannot reach the merits of the appeal." (Internal quotation marks omitted.) *Morgan* v. *Morgan*, 136 Conn. App. 371, 372, 46 A.3d 255 (2012).

II

Next, the defendant claims that the court improperly modified postdissolution orders delineating how and when the plaintiff is permitted access to his children's health and academic records. We disagree with the

defendant's characterization of the court's rulings concerning these orders.

First, we note that over the course of two days of hearings, the court *twice* rephrased the access order after it was issued on April 4, 2013. The final order, issued on April 11, 2013, as stated by the court, gave the plaintiff "complete and thorough access to all schools, all treaters, all therapists, for any and all reason." The defendant argues that this order constituted an abuse of discretion because the court modified prior orders that had been entered at the time of the dissolution by Judge Malone, and by Judge Shay on August 8, 2011, without allowing argument and "limiting" evidence, "despite a well documented history of the plaintiff consistently interfering with the children's academic and medical care and other activities."[11]

"[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review." (Internal quotation marks omitted.) *Clark* v. *Clark*, supra, 127 Conn. App. 153–54. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *In re Jonathan M.*, 255 Conn. 208, 217, 764 A.2d 739 (2001).

The judgment of dissolution states: "The [defendant] shall make sure that the [plaintiff] gets copies of all school information; medical information and the children's activities; however, the [plaintiff] shall not interfere with any of these issues whatsoever." The judgment also states: "Any and all parent-teacher conferences, counseling sessions or meetings involving any aspect of the health, education or welfare of either child, information, scheduling or prepared appointments shall be provided by each parent to the other parent. Both parties may attend such events." Because the judgment ordered the defendant to share information with the plaintiff on any aspects of the children's health, education or welfare, it necessarily contemplated that the plaintiff also would be receiving such information directly. Nowhere in the dissolution judgment did the court prohibit the plaintiff from making direct contact with the children's educational or other providers, nor

did the court make any finding that he should be denied such contact for good cause shown, pursuant to § 46b-56 (g). We construe the noninterference provision as an affirmation that decisions on educational and treatment issues were in the sole discretion of the defendant, who had been awarded sole custody, but not a prohibition on the plaintiff's right to direct access to information concerning school, medical or activities information.

On August 8, 2011, Judge Shay conducted a hearing and issued orders concerning a dispute about where the parties' older son would attend boarding school. We previously noted that the dispute involved only the issue of where to enroll the parties' oldest child in private school and how much involvement the plaintiff should have in the making of the admissions decision.[12] Judge Shay ordered the plaintiff not to interfere with the defendant's process of choosing the school, as the defendant was the sole custodian, a reiteration, not a modification, of the previous orders contained in the dissolution judgment that the plaintiff not interfere with the defendant's decisions as sole custodian. Judge Shay noted that he would regard the orders he was considering to resolve the school enrollment dispute as a clarification and not a modification of the orders contained in the judgment of dissolution.

At the hearing on April 4, 2013, Feltman indicated to the court that she did not believe that there were any court orders in place at the present time preventing the plaintiff from contacting the children's schools for purposes of checking on their status or contacting a physician to check on their status, but she thought that the court should clarify the plaintiff's right to access. Lax, counsel for the minor children, added that although the defendant had sole custody of the children, § 46b-56 (g) still permitted the plaintiff to make contact for information about the academics, health and welfare of the children, and that the court should "reiterate the order that sole custody [to the defendant] does not preclude the [plaintiff] from getting information pursuant to the statute." The court indicated, "I'm relying on the court file itself. I do not believe that based on the document, the orders of Judge Shay, that [the plaintiff] at this particular time is precluded from communicating with the schools, the health care providers or any of those people."

The defendant argues that the court's clarification of the plaintiff's right of direct access to the children's providers was an improper modification of the judgment of dissolution and Judge Shay's August 8, 2011 orders. We do not agree. "Motions for interpretation or clarification, although not specifically described in the rules of practice, are commonly considered by trial courts and are procedurally proper. . . . There is no time restriction imposed on the filing of a motion for clarification . . . and the court [has] the power to clar-

ify matters not of substance." (Citations omitted.) *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 366, 576 A.2d 1317 (1990).[13]

We conclude, after a thorough review of the record and the prior orders in the file, that the court was clarifying, not modifying the prior orders contained in the dissolution judgment, and that the orders of Judge Shay with respect to the plaintiff's noninterference with the child's admission to a school in 2011 were moot, having served their desired purpose.[14] In addition, the court was seeking to enforce the statutory right of access granted to the noncustodial plaintiff under § 46b-56 (g). Although the court used the word "modify" several times, the court actually was granting the requests of Lax, Feltman, and the plaintiff to clarify and enforce the plaintiff's existing right of access pursuant to § 46b-56 (g), with reference to the orders in the judgment of dissolution and the order of Judge Shay, none of which prevented the plaintiff from contacting the children's schools, medical or other providers as of April 11, 2013. One reason for the clarification, and the court's several reiterations of it, was to make clear to the defendant that her demonstrated determination to prevent direct access by the plaintiff was not legitimately undertaken pursuant to any existing order of the court and was no longer going to be tolerated. The court confirmed that, as long as the plaintiff did not interfere with the defendant's decision-making, he was not prohibited from making direct contact with any of the children's current providers to ascertain their educational, medical or therapeutic status.

Although the defendant characterizes the court's orders as a modification and, in discussing the orders at issue, the court used the word "modify" several times, "neither of these factors influences the actual nature of the motion or the court's responsive ruling. It has been recognized by both this court and our Supreme Court that despite the movant's or the trial court's characterization of a motion, a reviewing court examines the practical effect of the responsive ruling in determining the nature of the pleading. . . . On review, we look to the substance of the relief sought by the motion and the practical effect of the trial court's responsive ruling." (Citations omitted.) *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 532, 865 A.2d 1240 (2005). The court's clarification order merely determined that the original judgment and any subsequent court orders had never prohibited the plaintiff from exercising the statutorily mandated right to access afforded to him by § 46b-56 (g). The court's orders did not alter the judgment of dissolution or result in a modification of the original judgment or any prior order. We find that the court did not abuse its discretion or act unreasonably in clarifying and enforcing the plaintiff's right of access to his children's information as part of the court's determination that the case move forward with efforts to reunify the

plaintiff with his two children.[15]

### III

The defendant's next claim is that the court, in seeking to enforce the plaintiff's right of access to his children's providers, "forc[ed]" her to sign release authorizations, thereby giving the plaintiff access to medical and educational materials related to the parties' children. We disagree.

The order at issue in this claim was necessitated by the fact that counsel for the plaintiff disclosed to the court that the defendant was instructing certain providers, primarily the children's schools, not to communicate with the plaintiff, and that some of the providers, knowing that the defendant had been granted sole legal custody, were insisting on a release from her before they would have any direct contact with the plaintiff. Feltman indicated that she had seen an e-mail that the defendant wrote to the older child's school with instructions not to speak to the plaintiff. On April 11, 2013, the court indicated to the defendant that she was not to leave the courthouse that day until she *either* signed release authorizations permitting the plaintiff access to the children's providers *or* reported back to the court her reasons for not doing so, in which case, the court would conduct further proceedings. The defendant was given a clear option to choose not to sign the releases and return to the court for a further hearing; instead of opting to pursue the matter during a hearing, she chose to sign them and raised no further objections, although she was given the opportunity to do so.

The defendant did not return that day and object to the court's order. Furthermore, by failing to return to the courtroom and express her reasons for refusing to sign the release authorizations and requesting an evidentiary hearing to establish her claim that the plaintiff had a history of interference with the children's activities, the defendant did not afford the court a timely opportunity for reconsideration. The record is therefore devoid of any evidence or deliberation as to why the release authorizations should not have been signed or whether the signing of them would have prejudiced the defendant. "It is fundamental that claims of error must be distinctly raised and decided in the trial court. . . . Practice Book § 60-5 provides in relevant part that our appellate courts shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . That requirement means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . As our Supreme Court has explained, [t]he reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omit-

ted; emphasis omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 814–15, 34 A.3d 1005 (2012).

Furthermore, having acquiesced in the court's first suggested option by signing the release authorizations, the defendant cannot now seek to attack the order to do so on appeal. Generally, when an appellant has expressed agreement with or has acquiesced in a court's ruling, she cannot obtain appellate review of such ruling on appeal. See, e.g., *Perugini* v. *Giuliano*, 148 Conn. App. 861, 870–71, A.3d (2014) (court declines to review unpreserved claim that trial court erred in suspending deposition when at trial appellant agreed to terms of court's order regarding suspension); *Menon* v. *Dux*, 81 Conn. App. 167, 170–71, 838 A.2d 1038 (claim unpreserved where appealing party expressly acquiesced in court's evidentiary ruling at trial), cert. denied, 269 Conn. 913, 852 A.2d 743, cert. denied, 543 U.S. 1003, 125 S. Ct. 623, 160 L. Ed. 2d 463 (2004). Accordingly, we decline to review this unpreserved claim.

IV

The defendant's final argument is that the trial court improperly "lifted" an appellate stay that was in effect with respect to its orders permitting the plaintiff to directly obtain information from the children's academic and health providers and requiring her to sign release authorizations to facilitate that access. She claims that the court erred in lifting the stay on April 11, 2013, pursuant to Practice Book § 61-11, by classifying its orders as custodial.[16] The record is inadequate to review her claim. There is no indication in the record that the court vacated a stay on either April 4 or 11, 2013, the two hearings that are the subjects of this appeal. There are no motions in the record filed by either party addressing the issue of a stay on appeal. During the April 11, 2013 hearing, although the court indicated that it did not believe that anything other than its orders with respect to the guardian ad litem were stayed, it then stated that it would entertain a motion to vacate a stay if one existed, and scheduled a date, May 22, 2013, for such a motion to be heard as a "write on . . . ." That is as far as the discussion of the existence of any appellate stay developed.[17]

Moreover, even if we had been provided with an adequate record to review this claim, which indicated when the court vacated the stay and its reasons therefor, such a claim would not be reviewable on direct appeal. "Pursuant to Practice Book § 61-14, [t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6. . . . Issues regarding a stay of execution cannot be raised on direct appeal." (Internal quotation marks omitted.) *Housing Authority* v. *Morales*, 67 Conn. App. 139, 140, 786 A.2d 1134 (2001); see also *Santoro* v. *Santoro*, 33 Conn. App. 839, 841,

639 A.2d 1044 (1994). Practice Book § 66-6 requires that "[m]otions for review . . . be filed within ten days from the issuance of notice of the order sought to be reviewed. . . ." If a party does not file a motion for review, that party is precluded from challenging the court's stay order by means of a direct appeal. See *Federal Deposit Ins. Corp.* v. *Caldrello*, 79 Conn. App. 384, 392 n.6, 830 A.2d 767 (2003). We therefore decline to review this claim because it has been improperly presented for resolution on appeal.

The appeal is dismissed with respect to the defendant's claims that the court improperly appointed Feltman as guardian ad litem and improperly required the defendant to pay one half of Feltman's fees. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff did not appear to defend this appeal. Pursuant to Practice Book § 67-13, "[i]n family and juvenile matters and other matters involving minor children, counsel for the minor child . . . shall, within ten days of the filing of the appellee's brief, file either: (1) a brief, (2) a statement adopting the brief of either the appellant or an appellee, or (3) a detailed statement that the factual or legal issues on appeal do not implicate the child's interests."

In the present case, the attorney for the minor children filed a § 67-13 statement, indicating, in relevant part, as follows: "It is the undersigned's position that the issues raised in the defendant's appeal are moot with respect to the appointment and fees of the guardian ad litem. The undersigned also believes the issue is moot with respect to [access to information by the plaintiff, Kenneth V. Clark], as he has been receiving the same pursuant to a subsequent order of the trial court." This statement is made without any reference to the date or substance of the subsequent order. The attorney for the minor children did not attend oral argument before this court. Accordingly, we consider the appeal on the basis of the appellate brief of the defendant, the oral arguments advanced by the defendant before this court, and the statement from the attorney for the minor children.

[2] On January 14, 2014, we notified the defendant to be prepared at oral argument to address the following issues: (1) whether the portion of the appeal challenging the appointment of the guardian ad litem should be dismissed as moot because the trial court subsequently vacated that order; (2) whether this court lacks jurisdiction because the trial court has not yet set the amount of the guardian ad litem's fees; and (3) whether the defendant's claim challenging the trial court's order regarding an appellate stay is reviewable on direct appeal.

[3] Three earlier appeals have been disposed without any decision on the merits. An appeal from the judgment of dissolution was the subject of *Clark* v. *Clark*, 127 Conn. App. 148, 13 A.3d 682, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011). An appeal from postjudgment orders is reported in *Clark* v. *Clark*, 130 Conn. App. 786, 26 A.3d 640 (2011). An appeal filed by the law firm of the appellant's former counsel from the denial of counsel's motion to intervene is reported in *Clark* v. *Clark*, 115 Conn. App. 500, 974 A.2d 33 (2009). In addition to this appeal, there is another pending appeal that was filed on December 27, 2013, under Docket No. AC 36415.

[4] This court reversed the judgment of dissolution "only insofar as it [failed] to include the arrearage of pendente lite support" and remanded the case for further proceedings as to that issue. *Clark* v. *Clark*, supra, 127 Conn. App. 160.

[5] Reference is made in the defendant's brief to a pendente lite order issued by Judge Schofield on July 9, 2007, suspending the plaintiff's visitation with the children, but the order cannot be located in the court file. There is no dispute, however, that the plaintiff has not had visitation with the children for years.

[6] Reference is made during the hearing to the plaintiff's pending motion to modify his unallocated child support and alimony, to which the defendant filed an objection, but the court did not conduct a hearing on that motion. The court file contains a motion for continuance of a status conference,

granted by Judge Emons on March 18, 2013, and rescheduling a status conference for April 4, 2013. We will presume that the matter was before the court on April 4, 2013, for a status conference, which is what the defendant indicated during oral argument.

[7] There is a partial transcript in the file indicating that on August 8, 2011, Judge Shay held a hearing to resolve the issue of where the older child would attend school that fall. Judge Shay began the hearing by stating, "[W]e all start with a statutory right of both parents to obtain school records and medical records of their children." After a lengthy discussion of what had occurred thus far to find the older child a suitable educational placement, with the defendant providing the court with most of the information, the plaintiff complained that he was being left out of the admissions process. Ultimately, the court advised the defendant: "[I]f there's something you're comfortable sharing with [the plaintiff] with regard to the plans that are going forward affecting his son and your son, then you need to share them with him." The court then addressed the plaintiff, stating, "And you, sir, need to put your hands in your pockets or sit on them or whatever, and just take that as information and, like, for instance, if she were to call and say we believe collectively that [the older son] should be in such and such a school . . . and she tells you that, I don't want you calling that school. I don't want you interviewing anybody down there. Because we'll deal with this, we'll get to this issue, but you've got to do it in a logical manner. So . . . you're entitled to know the school, you're entitled to know the cost. You're entitled to know the schedule. . . . But once you get that information . . . you are not to be calling the school. You are not to be interfering in any way with that. . . . You can hire a lawyer if you want. You can come back in and you can file a motion that says, nope, I think it's in his best interest that he goes to private school, public school, whatever. . . . That's your right. . . . But until a court says otherwise, it's her decision." In concluding, the court stated: "So, [the defendant] sends the information to you, as I said, if she has brochures, it if describes the curriculum, if it describes the facility, if it describes the overall school, the school year, whatever. You're entitled to that information. . . . You're entitled to know what the projected costs are for that. You're entitled to know if and when there are any scholarship[s] or any programs that would remit tuition or whatever, you're entitled to know that. But what you're not entitled to do *at this stage* without further order of the court [is] to contact them in any fashion, and that would include a personal visit, e-mail, phone call, text, tweet." (Emphasis added.)

[8] General Statutes § 46b-56 (g) provides: "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child, unless otherwise ordered by the court for good cause shown."

[9] In addition to his complaint to Judge Shay on August 8, 2011, about not being provided with information as to the older child's admission process; see footnote 7 of this opinion; the plaintiff previously had filed several motions in which he alleged, inter alia, that the defendant had failed to provide him with information about the children.

[10] During oral argument before this court, the defendant admitted that the order of which she complains, to pay Feltman one half of a total fee of $3000, was issued on a date subsequent to April 11, 2013, and that she failed to amend her appeal or provide the appropriate transcript.

[11] At various points in her brief, the defendant claims that testimony and evidence were presented to the court, but the record reflects that no witnesses were sworn and no exhibits were marked on either April 4 or 11, 2013.

[12] Previously in this opinion, we set forth the substance of Judge Shay's ruling. See footnote 7 of this opinion. We note that the defendant argues that the word "them" in the final sentence of the court's ruling refers to the parties' children. It is well settled that "[t]he construction of an order is a question of law over which we exercise plenary review." *Gianetti* v. *Gerardi*, 122 Conn. App. 126, 130, 998 A.2d 807 (2010). We disagree with this interpretation of the order and conclude, upon reviewing the order in its entirety, that the word "them" refers to the schools being considered for the parties' older child. Furthermore, we conclude that the court's order precluded the plaintiff only from contacting the school or schools being considered during the admissions process.

[13] In her brief, the defendant also argues that any order should have been clarified by the judge who first entered it. "There is no requirement that the same judge rule on all matters arising after a dissolution judgment. See, e.g., *Barnard* v. *Barnard*, 214 Conn. 99, 100, 570 A.2d 690 (1990); *Kolkmeyer* v. *Kolkmeyer*, 18 Conn. App. 336, 337, 558 A.2d 253 (1989)." *Holcombe* v. *Holcombe*, supra, 22 Conn. App. 365.

[14] As of April 11, 2013, the older child was enrolled in and attending a private school in Buffalo, New York.

[15] During the course of the hearing, the court stated: "We need to get off of the frozen zone and get something done one way or the other. And if not . . . if we shouldn't do it immediately, we should put a plan in place for how to do it."

[16] Practice Book § 61-11 (c) states in relevant part: "Unless otherwise ordered, no automatic stay shall apply to . . . orders of periodic alimony, support, custody or visitation in family matters brought pursuant to chapter 25 or to any later modification of such orders. . . . Any party may file a motion to terminate or impose a stay in matters covered by this subsection, either before or after judgment is rendered, based upon the existence or expectation of an appeal. . . . The judge who entered the order in a family matter from which an appeal lies may terminate any stay in that matter upon motion of a party . . . or sua sponte, after considering the factors set forth in this subsection or if the judge is of the opinion that an extension of time to appeal is sought or the appeal is taken only for delay. Whether acting on a motion of a party or sua sponte, the judge shall hold a hearing prior to terminating the stay."

[17] Even if the court had considered the issue of a stay and had determined that there was no automatic stay because the access order was custodial, we would decline to review such ruling because the defendant has failed to brief the issue adequately. "[W]e are not required to review claims that are inadequately briefed. . . . [A]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Her brief contains nothing but bald assertions that "[c]ommunications and getting reports" and "access to information" are "not custody issues," without providing any legal authority or analysis.

———————————————